IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| The PUBLIC INTEREST LEGAL FOUNDATION,<br>          *Plaintiff*,<br><br>   v.<br><br>ANN HARRIS BENNETT, in her official capacity as Voter Registrar for Harris County, Texas,<br><br>          *Defendant*.<br><br>**Serve: Ann Harris Bennett**<br>      1001 Preston St.<br>      Houston, Texas 77002 | Civil Action No. _____ |

## **VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Public Interest Legal Foundation ("the Foundation"), by and through undersigned counsel, brings this action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. 20507.

1.  Section 20507(i) of the National Voter Registration Act mandates the public disclosure of voter registration activities. This section requires election administration officials to make available for public inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Despite this requirement, and despite repeated requests for public inspection, the Defendant voter registrar for Harris County, Texas, has refused to comply and make her records available to the Foundation.

2.  Plaintiff seeks declaratory and injunctive relief. The Foundation seeks a declaration that all of Defendant's records related to list maintenance, including but not limited to those

explicitly requested by the Foundation, are subject to public inspection without encumbrance by any state public disclosure laws and must be preserved for such inspection purposes. The Foundation seeks an injunction to compel Defendant Bennett to comply with Subsection 20507(i) through an order commanding her to permit inspection and duplication of all records concerning the maintenance of registration lists.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), as the action seeks injunctive and declaratory relief under the NVRA.

4. Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5. The Public Interest Legal Foundation, Inc., (the "Foundation") is a non-partisan, public interest organization incorporated and based in Indianapolis, Indiana. The Foundation seeks to promote the integrity of elections nationwide. The Foundation has dedicated significant time and resources to ensure that registration lists in the State of Texas, and in other jurisdictions across the United States, are free from ineligible registrants, noncitizens, individuals who are no longer residents, individuals who are registered in more than one location, and other inaccuracies.

6. Defendant Ann Harris Bennett is the Voter Registrar of Harris County, Texas. As such, she is charged with the administration of federal and state election laws, including registration of voters, the maintenance of the official lists of eligible voters of Harris County, together with the preservation of all records related to the activities involved in maintenance of

those lists. *E.g.*, Tex. Elec. Code Ann. § 12.001, Tex. Elec. Code Ann. § 15.022(a)-(b), and Tex. Elec. Code Ann. § 31.043; 52 U.S.C. § 20507(a)-(d).

7. Federal law requires Defendant Bennett to remove eligible registrants from the rolls. "A voting registrar *shall* correct an official list of eligible voters in elections for Federal office in accordance with change of residence information . . . ." 52. U.S.C. § 20507(d)(3). Federal law also requires "local election officials [to] perform list maintenance with respect to the computerized [state] list on a regular basis." 52 U.S.C. § 21083(a)(2)(A).

8. Under 52 U.S.C. § 20507(i), Defendant Bennett is required to preserve all records related to her list maintenance activities for a period of two years, at a minimum, and must permit public inspection of all of these records.

## BACKGROUND

**The National Voter Registration Act**

8. The NVRA provides that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection . . . **all records** concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ." 52 U.S.C. § 20507(i)(1) (emphasis added). *Project Vote v. Long*, 682 F.3d 331, 337 (4th Cir. 2012) ("First, the statute clearly states that '*all* records' falling under Section 8(i)(1) must be publicly disclosed, not just those explicitly listed in Section 8(i)(2).") (emphasis by the court).

9. The only records exempted from the NVRA's public disclosure requirement are "records relate[d] to a declination to register to vote or the identity of a voter registration agency through which any particular voter is registered." 52 U.S.C. § 20507(i)(1).

3

**Registration Lists and Registration List Maintenance in Texas**

10. In addition to her federal statutory obligations, numerous Texas statutes vest the primary power to place eligible registrants' names on the Harris County registration list and to remove ineligible registrations from that list upon Defendant Bennett. These state statutory obligations include:

(a) Tex. Elec. Code Ann. § 13.071 requires the local registrar to review applications for registration to determine whether the applicant is eligible to register under the law.

(b) Tex. Elec. Code Ann. § 15.022(a) mandates "[t]he registrar shall make the appropriate corrections in the registration records, including, if necessary, deleting a voter's name from the suspense list."

(c) Tex. Elec. Code Ann. § 15.081 and § 16.032 direct that the local registrar maintains the suspense list for his or her county, and in appropriate circumstances the local registrar is empowered to cancel the registration of certain persons on the voter suspense list.

(d) Tex. Elec. Code Ann. § 16.0332 states that "the registrar shall cancel the voter's registration" . . . "if a voter fails to submit to the registrar proof of citizenship" within 30 days of being mailed a notice requesting such proof after the registrant is "excused or disqualified from jury service because of citizenship status . . . ."

(e) Tex. Elec. Code Ann. § 16.035 directs that when the local registrar cancels a registration, that cancellation is effective immediately.

(f) Tex. Elec. Code Ann. § 16.061 states that once the local registrar cancels a registration, the registrant has a right to challenge that cancellation at a hearing before the local registrar. After the hearing, the registrar is to issue a decision in writing concerning the challenge. Tex. Elec. Code Ann. § 16.066.

(g)    Tex. Elec. Code Ann. § 18.001 requires the Defendant to prepare the certified list of registered voters eligible to vote in upcoming elections. This list is the government record which is used to determine eligibility to cast a ballot in a Texas election.

(h)    Tex. Elec. Code § 16.034 requires that, when cancelling a registration for any reason, Defendant Bennett must enter the date of and reason for the cancellation on the registration application and duplicate registration certificate and make any other appropriate corrections in the registration records.

(i)    Tex. Elec. Code § 16.0331 requires Defendant Bennett to maintain all requests for cancellation of registrations received.

(j)    Tex. Elec. Code § 16.0332 requires Defendant Bennett to maintain all records related to cancellation of registrations because of citizenship status.

11.    Under Texas law, Defendant Bennett is required to maintain the list of eligible voters for Harris County using the computerized voter registration list. Tex. Elec. Code Ann. § 18.061(c).

12.    The inspection provision of the NVRA, 52 U.S.C. § 20507(i) requires Defendant Bennett to maintain all records related to all list maintenance activities, including those in Paragraph 10, whether or not they are included in the computerized voter registration system.

13.    The inspection provision of the NVRA requires the Defendant to provide public inspection of all the records related to all list maintenance activities, including those listed in Paragraph 10, whether or not they are included in the computerized voter registration system. 52 U.S.C. § 20507(i). *Project Vote*, 682 F.3d at 334 (finding that the plaintiff had standing to sue the county administrator for failure to permit inspection); *Bellitto v. Snipes*, 221 F. Supp. 3d 1354, 1366 (S.D. Fla. 2016) ("§ 20507(i) requires . . . that Defendant [county Supervisor of Elections]

5

'make available for public inspection . . . *all records* concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . .'") (quoting 52 U.S.C. § 20507(i) (emphasis in original opinion)); *Voter Integrity Project NC, Inc. v. Wake Cnty. Bd. of Elections*, ___ F. Supp. 3d ___, 2017 U.S. Dist. LEXIS 23565 at *12, n.5 (E.D. NC 2017) ("[T]o the extent it maintains records concerning implementation of its list maintenance activities . . . [the Board of Elections] is required to make such records available for public inspection.").

14. In addition, Tex. Elec. Code § 18.066 provides that, "(a) The secretary of state shall furnish information in the statewide computerized voter registration list to any person on request not later than the 15th day after the date the request is received. (b) Information furnished under this section may not include: (1)a voter's social security number; or (2) the residence address of a voter who is a federal judge or state judge, as defined by Section 13.0021 , or the spouse of a federal judge or state judge, if the voter included an affidavit with the voter's registration application under Section 13.0021 or the applicable registrar has received an affidavit submitted under Section 15.0215."

**Noncitizen Registration and Voting Is a Crime**

15. A person must be a citizen of the United States in order to vote in Texas. Tex. Const. Art. 6, Sec. 2(a); Tex. Elec. Code Ann. § 11.002(a)(2).

16. Registration and voting by a noncitizen is criminalized under multiple federal felony statutes:

    a. 18 U.S.C. § 611 (criminalizes voting by illegal aliens in federal elections);

    b. 18 U.S.C. § 911 (criminalizes representing oneself to be a United States citizen);

6

  c.  18 U.S.C. § 1015(f) (criminalizes false statements in order to register to vote in any federal, state, or local election);

  d.  52 U.S.C. § 20511(2) (criminalizes the fraudulent submission of voter registration applications and the fraudulent casting of ballots).

17. Registration and voting by noncitizens is a matter serious enough for the Congress to implement a criminal deterrent where at least four separate federal felonies are implicated by the behavior.

**The Foundation's Mission and Research**

18. As part of its exempt purpose mission to advance election integrity and further public education on election issues, the Foundation submitted a request pursuant to the NVRA for list maintenance records maintained by the Harris County Voter Registrar on December 1, 2017.

19. Texas held a primary election on March 6, 2018, which included elections for federal office. 120 days before that election was November 6, 2017.

20. Research conducted by the Foundation in other states, including Virginia, Pennsylvania, and New Jersey shows that noncitizens can and do register to vote and participate in elections.

21. In large measure, the illegal registration of noncitizens was discovered by self-reporting by aliens who wish to cancel their registrations. There were no active processes in place to detect and remove noncitizen registrations in the studies conducted by the Foundation. Only self-reporting aliens, who often were concerned with jeopardizing their immigration status, led to their detection and removal from the rolls in Pennsylvania and in other states.

22. In Philadelphia, of the 86 noncitizens whose registrations were cancelled, 40 had cast a ballot in at least one election prior to cancellation. Public Interest Legal Foundation, *Aliens*

*and Felons: Thousands on the Voter Rolls in Philadelphia* at 2, October 4, 2016, available at https://publicinterestlegal.org/files/Philadelphia-Litigation-Report.pdf.

**Noncitizen Registration and Voting in Harris County, Texas**

23. Investigations by the Foundation and others have revealed that noncitizens are registering and voting in Harris County, Texas.

24. In 2006, then-Harris County Tax Assessor-Collector Paul Bettencourt testified before the U.S. Committee on House Administration that "illegal voting and registration by foreign nationals is difficult for my office to prevent without federal assistance." "You Don't Need Papers to Vote?" Non-Citizens Voting and ID Requirements in U.S. Elections: Hearing before the U.S. Committee on House Administration, June 22, 2006, Transcript at 67, 109th Cong., 2nd Sess.[1] His written and oral testimony described how his office is left largely in a reactionary posture when preventing against noncitizen participation, noting three distinct levels of detection (as referenced in the Foundation's initial request for documents): the checkbox "honor system" for declaring eligibility; alerts from the U.S. Customs and Immigration Service that a registered voter is attempting to naturalize; and data shared from the Harris County Clerk of Court regarding individuals' claims of noncitizenship to avoid jury duty.

25. Registrar Bettencourt asserted to Congress, "The extent of illegal voting by foreign citizens in my home county is impossible to determine, but we know that it has and will continue to occur." *Id*. The testimony added that at the time, "nearly 1 in 4" Harris County residents were born outside of the United States and 500,000 were noncitizens. *Id*. Bettencourt noted "as it now stands, we have no real way to stop foreign citizens from voting." *Id*. at 68. The Registrar also

---

[1] *Available at* https://www.scribd.com/document/333272572/HOUSE-HEARING-109TH-CONGRESS-HEARING-ON-YOU-DON-T-NEED-PAPERS-TO-VOTE-NON-CITIZEN-VOTING-AND-ID-REQUIREMENTS-IN-U-S-ELECTIONS.

shared examples of foreign nationals from Norway and Brazil managing to register multiple times and cast ballots in federal elections—only to be discovered after the fact. *Id*. To Bettencourt's knowledge, his office was aware of several dozen more cases at the time of his federal testimony. *Id*.

26. In 2015, the Foundation submitted research on behalf of a client to the U.S. Supreme Court detailing a very small sample of 13 cases where individuals admitted to noncitizenship or refused to declare a status at all when applying for voting, yet were registered anyway. Brief of the American Civil Rights Union as Amicus Curiae, *Kobach v. U.S. Election Assistance Commission*, No. 14-114, *available at* http://publicinterestlegal.org/files/Kobach-Amicus-Final.pdf.

27. Separately in 2015, then Harris County Tax Assessor-Collector Mike Sullivan offered testimony before the Texas House Elections Committee hearing and fielded specific questions regarding noncitizen voter participation in Harris County. House Bill 76, A Bill to Establish Online Voter Registration: Hearing before the Texas House Elections Committee, May 2, 2015, video beginning at 3:54:59, available at http://tlchouse.granicus.com/MediaPlayer.php?view_id=37&clip_id=10962. When asked if his office "ever discovered that someone registered is not an American citizen?" Sullivan replied, "Yes sir … We turn that over to the Harris County District Attorney's Office on a regular basis. The last letter I signed had over 300 cases on it." *Id*. He explained that such an effort occurred on a "monthly" basis typically containing cases in the "low hundreds" and confirmed in the affirmative that a sum of cases would amount in the "low thousands annually." *Id*.

**The Foundation Sought and Was Denied Access to Records Concerning Noncitizen Registrations**

28. The Foundation's exempt purpose mission includes research and public education regarding list maintenance across the country and its effects on election integrity and the efficient conduct of elections. The Foundation pursues this mission by conducting research into the state of registration lists and list maintenance procedures, while also encouraging remedial action by working with election administrators nationwide and educating the public. The Foundation's exempt activities include pursuing remedial litigation as a "private attorney general" if necessary. *See Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 364 (5th Cir. 1999) (finding that the inclusion of a private right of action in the NVRA shows Congress's intent to "encourage enforcement by so-called 'private attorneys general'" (quoting *Bennett v. Spear*, 520 U.S. 154, 157 (1997)).

29. The Foundation's mission and activities are being directly burdened and hampered by Defendant Bennett's refusal to provide public inspection of the requested list maintenance records.

30. On December 1, 2017, the Foundation submitted a written request to Defendant Bennett in accordance with 52 U.S.C. § 20507(i) for inspection of list maintenance records. Exhibit A ("December 1 Request"). The request explicitly stated that the request for disclosure of records was being made pursuant to the NVRA.

31. Pursuant to the public records inspection provision of the NVRA, 52 U.S.C. § 20507(i), the Foundation's December 1 Request sought the opportunity to inspect or receive electronic copies of records concerning noncitizen registrations, including records related to their removal from the registration lists and referrals to law enforcement. Exhibit A.

32. The December 1 Request specifically identified four categories of documents:

(a) Documents regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any official information source, including information obtained from the various agencies within the U.S. Department of Homeland Security, Texas Department of Public Safety, and from the Texas Secretary of State since January 1, 2006. This request extends to all documents that provide the name of the registrant, the voting history of such registrant, the nature and content of any notice sent to the registrant, including the date of the notice, the response (if any) of the registrant, and actions taken regarding the registrant's registration (if any) and the date of the action. This request extends to electronic records capable of compilation. Exhibit A at 1.

(b) All documents and records of communication received by your office from registered voters, legal counsel, claimed relatives, or other agents since January 1, 2006 requesting a removal or cancellation from the voter roll for any reason related to non-U.S. citizenship/ineligibility. Please include any official records indicating maintenance actions undertaken thereafter. Exhibit A at 1.

(c) All documents and records of communication received by your office from jury selection officials—state and federal--since January 1, 2006 referencing individuals who claimed to be non-U.S. citizens when attempting to avoid serving a duty call. This request seeks copies of the official referrals and documents indicating where your office matched a claim of noncitizenship to an existing registered voter and extends to the communications and maintenance actions taken as a result that were memorialized in any written form. Exhibit A at 1-2.

11

(d) All communications regarding your list maintenance activities relating to #1 through 3 above to the District Attorney, Texas Attorney General, Texas State Troopers/DPS, any other state law enforcement agencies, the United States Attorney's office, or the Federal Bureau of Investigation. Exhibit A at 2.

33. The December 1 Request also requested inspection of any related records. Exhibit A at 2-3.

34. The December 1 Request offered to make arrangements for inspection or production of the requested records and provided contact information. Exhibit A at 3.

35. The December 1 Request informed Defendant Bennett, "[I]f you fail to make these records available for public inspection, you will be in violation of the NVRA and subject to an action to enforce the public records provisions of the NVRA." Exhibit A at 3.

36. The Foundation received a response from the office of the Harris County Attorney dated December 14, 2017. Exhibit B ("Dec. 14 Clarification Request"). This response asked for clarifications regarding the Foundation's Dec. 1 Request. The Dec. 14 Clarification Request did not mention the NVRA at all. Exhibit B. Instead, it stated that the Foundation's request was being treated under the Texas Public Information Act ("TPIA"). Tex. Gov't Code § 552.001 *et. seq*. The Dec. 14 Clarification Request asked for clarifications regarding whether only records related to noncitizen removals were being requested, whether the request was being made under the Texas Public Information Act, and whether the Foundation was seeking inspection or copies of the records. Exhibit B. All of these questions were clear from the Foundation's Dec. 1 Request.

37. The Foundation responded to the Defendant's Dec. 14 Clarification Request with a letter dated December 18, 2017. Exhibit C ("Dec. 18 Clarification Response"). In this letter, the Foundation explained how all of the clarifications requested by the Defendant were in fact in the

original request and proceeded to answer the clarifications. The Dec. 18 Clarification Response reiterated that the inspection request was being made under 52 U.S.C. § 20507(i) of the NVRA and not under the Texas Public Information Act. Exhibit C at 1. The Dec. 18 Clarification Response informed the Defendant that the NVRA inspection provision is not subject to the restrictions of the TPIA and that the Foundation is seeking inspection or photocopying only where electronic reproduction is not possible. Exhibit C at 2.

38. Defendant Bennett did not produce any of the requested records and the Foundation received no further direct communications from the Defendant after sending the Dec. 18 Clarification Response.

39. The next communication the Foundation received was a copy of a letter and memorandum from the Harris County Attorney to the Attorney General of Texas, dated January 4, 2018. Exhibit D ("Jan. 4 AG Submission"). In this letter to the Attorney General, the Defendant again does not mention the NVRA at all, despite the explicit and clear reiteration in the Foundation's Dec. 18 Clarification Response. Instead, the Defendant ignored and rejected the Foundation's NVRA inspection request, and submitted the matter to the Attorney General treating it as a request under the Texas Public Information Act. The Jan. 4 AG Submission seeks an exception to the TPIA regarding the records referred to in the Foundation's request.

40. Therefore, on January 4, 2018, the Defendant rejected the Foundation's NVRA inspection request and proceeded to process the request under the TPIA instead.

41. On January 11, 2018, the Harris County Attorney, on Defendant's behalf, proceeded to submit a memorandum to the Texas Attorney General explaining the exception they were seeking under the TPIA. Exhibit E ("Jan. 11 Memo"). The Foundation was copied. This memo, yet again, makes no mention of the NVRA whatsoever. In the Jan. 11 Memo, the Defendant

explains, in relevant part, her belief that the TPIA "clearly prohibits the Harris County Voter Registrar from producing" all of the records requests by the Foundation. Exhibit E at 3. The Jan. 11 Memo also describes the Defendant's intention to withhold and redact important and relevant information from certain records. Exhibit E at 7 ("[W]e seek to withhold the identity of the complainant on the basis on the basis of the informer's privilege.").

42. In a letter dated January 18, 2018, the Foundation informed the Defendant that she was in violation of the NVRA for rejecting the Foundation's inspection request. Exhibit F ("NVRA Violation Letter"). In the letter, the Foundation clarified for the third time, "Our request is not a request pursuant to the Texas Public Information Act." Exhibit F at 1. Accordingly, as explained in the NVRA Violation Letter, the provisions of the TPIA are irrelevant to the Foundation's request.

43. The Foundation has received no response from Defendant regarding the NVRA Violation Letter.

44. The Foundation was copied on a letter from the Texas Attorney General to the Defendant dated March 15, 2018. Exhibit G ("AG Response"). The letter responds to the Defendant's Jan. 11 Memo. The AG Response makes no mention of the NVRA. The AG Response states that, under the TPIA, certain records are not subject to disclosure at all and others must be redacted.

45. True and correct copies of all the communications described in Paragraphs 30 through 44 are attached as Exhibits to this Verified Complaint.

46. Since the Dec. 1 Request, the Defendant has not permitted the inspection of any of the records requested by the Foundation.

47. Defendant's violation of the NVRA by rejecting the Foundation's inspection request and instead processing it as a TPIA request occurred on at least January 4, 2018, which was within 120 days of the March 1, 2018 Texas primary election. 52 U.S.C. § 20510(b)(2).

48. The Defendant has not made any records available for public inspection, but has rejected the Foundation's requests under the NVRA.

**Defendant Has Violated the NVRA by Refusing to Fulfill the Foundation's NVRA Inspection Request**

49. The records requested from Defendant on December 1, 2017, are records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of the official lists of eligible voters. . . ." 52 U.S.C. § 20507(i)(1).

50. Under the NVRA, the Defendant is obligated to make the requested records available for public inspection and photocopying. Defendant has not done so and is therefore in violation of law.

51. The inspection provision of the NVRA preempts state law and is not subject to limitations or restrictions through state public information or privacy laws.

**Defendant's Violations of Law Have Harmed the Foundation and the Public**

52. As an integral part of its public interest mission, the Foundation gathers and disseminates information about compliance by state and local officials with federal election statutes, including election integrity statutes.

53. Using records and data compiled through use of the NVRA's public inspection provision, the Foundation has produced written reports concerning the registration and voting activity of noncitizens in order to advance its public education mission. These reports have been published on the Internet. *See* Public Interest Legal Foundation, *Alien Invasion II: The Sequel to the Discovery and Cover-up of Non-citizen Registration and Voting in Virginia*, May 29, 2017,

available at https://publicinterestlegal.org/blog/alien-invasion-ii-sequel-discovery-cover-non-citizen-registration-voting-virginia/; Public Interest Legal Foundation, *Garden State Gotcha*, Sept. 11, 2017, available at https://publicinterestlegal.org/files/Garden-State-Gotcha_PILF.pdf; Public Interest Legal Foundation, *Aliens & Felons: Thousands on the Voter Rolls in Philadelphia*, October 4, 2016, available at https://publicinterestlegal.org/files /Philadelphia-Litigation-Report.pdf.

54. The Foundation has disseminated this to federal, state, and local election officials and to the public through media and press sources. Representatives of the Foundation have appeared on national television programs discussing the inadequacies of state election systems in preventing aliens from registering and voting. The Foundation believes that transparency is an important tool to keep registration lists free of illegal registrants.

55. The Foundation plans to use the requested records to educate the public regarding noncitizen registration and voting in Harris County and participate in the ongoing debate regarding foreign participation in elections.

56. By denying the Foundation access to the requested records Defendants have impaired and will impair the Foundation from carrying out its mission.

57. A central activity of the Foundation is to promote election integrity and compliance with federal and state statutes that promote the integrity of elections by state and local election administrators. In doing so, the Foundation encourages remedial efforts on the part of election administrators so that they can come into compliance with the NVRA's requirements.

58. The Foundation plans to use the requested records to effect change at the administrative and legislative levels prior to the November election. These plans include meeting with election officials, crafting and proposing remedial solutions, and using the NVRA's private

right of action provision to enforce the NVRA's obligation to maintain registration rolls free of ineligible registrants.

59. The Defendant's violations of NVRA have impaired and will impair the Foundation from carrying out this component of its mission because the Foundation is prevented from determining the extent of any list maintenance issues in Harris County. This is the very purpose of the enforcement provision of the NVRA. *See Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 364 (5th Cir. 1999).

60. The failure of the Defendant to comply with her obligations under the NVRA has also undermined the confidence of Texas's properly registered voters in the integrity of the registration rolls, and, accordingly, has undermined the integrity of elections held across the State of Texas.

61. Defendant's violation has not been corrected within 20 days after receipt of the Foundation's January 18, 2018, notice of the violation for failure to provide inspection of records. 52 U.S.C. § 20510(b)(2).

62. The Foundation has spent considerable time and financial resources in an effort to obtain the requested records and to improve the accuracy of registration lists in Texas.

63. The Defendant's failure to permit inspection and duplication of the requested records pursuant to the NVRA has frustrated, impeded, and harmed the efforts of the Foundation.

64. A general federal election will take place on November 6, 2018. Remedial list maintenance activity must conclude 90 days before that election. Thus, there is a very limited time available to review list maintenance records and pursue remedial action.

## **COUNT I**

65. Plaintiff realleges paragraphs 1 through 64 as if fully stated herein.

66. Defendant has failed to permit inspection and duplication of records concerning Defendant's implementation of programs and activities for ensuring the accuracy and currency of official lists of eligible voters, in violation of Section 8 of the NVRA, 52 U.S.C. § 20507(i). *See Project Vote v. Long*, 682 F.3d 331, 334-335 (4th Cir. 2012) (The NVRA requires local election officials to provide such data to the public).

67. Defendant's violation has not been corrected within 20 days of the Foundation's notice of the violation on January 18, 2018, and the violation occurred within 120 days of an election for federal office. 52 U.S.C. § 20510(b)(2).

68. Plaintiff has suffered an irreparable informational injury as a direct result of Defendant's violations of Section 8 of the NVRA because the Plaintiff does not have the data and records requested. The NVRA confers upon Plaintiff a right to information, and by denying that information to the Plaintiff, the Defendants have caused a concrete injury to the Plaintiff. This violation also prevents the Plaintiff from engaging in its research, educational, and remedial activities.

69. Plaintiff will continue to be injured by the Defendant's violations of Section 8 of the NVRA unless and until the Defendant is enjoined from continuing to violate the law. This injury is all the more urgent because of the impending list maintenance deadline of 90 days before the November 6, 2018 federal election.

70. Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment:

1. Declaring that Defendant is in violation of Section 8 of the NVRA;

2. Declaring that the inspection provisions of the NVRA, 52 U.S.C. § 20507(i), preempt state laws and are not subject to limitations or restrictions by state laws.

3. Ordering the Defendant to provide to the Plaintiff the records concerning their implementation of programs and activities to ensure the accuracy and currency of voter registration lists;

4. Ordering the Defendant to pay Plaintiff's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and

5. Granting Plaintiff further relief that this Court deems just and proper.

Respectfully submitted,

For the Plaintiff Public Interest Legal Foundation:

Dated: March 29, 2018

/s/ Andy Taylor
Andy Taylor SBN: 19727600
Southern District Bar No.: 10002
Andy Taylor & Associates, P.C.
2628 Hwy 36 South #288
Brenham, Texas 77833
Tel: 713-222-1817
Fax: 713-222-1855
andy@andytaylorlaw.com

J. Christian Adams*
Public Interest Legal Foundation
300 N. Washington Street, Ste. 405
Alexandria, VA 22314
(317) 203-5599
adams@publicinterestlegal.org

Joseph A. Vanderhulst*
Noel H. Johnson*
Public Interest Legal Foundation
32 E. Washington Street
Suite 1675
Indianapolis, IN 46204
(317) 203-5599
jvanderhulst@publicinterestlegal.org

*Pro Hac Vice applications to be filed*

## VERIFICATION

I swear (or affirm) under the penalties for perjury under the laws of the United States that the foregoing statements concerning the Public Interest Legal Foundation found in this Complaint are true and correct to the best of my knowledge and understanding.

Dated: this __29__ day of March, 2018

_____
Logan Churchwell
Communications & Research Director
Public Interest Legal Foundation
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204