UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PUBLIC INTEREST LEGAL FOUNDATION, INC., § § § Plaintiff, § VS. § § ANN HARRIS BENNETT, § § Defendant. § § § | CIVIL ACTION NO. 4:18-CV-00981 |

## ORDER AND OPINION

Pending before the Court in the above-referenced voting records request case are Plaintiff Public Interest Legal Foundation, Inc.'s ("PILF") Motion for Preliminary Injunction, Doc. 3, PILF's Motion to Consolidate Hearing on Preliminary Injunction with the Trial on the Merits, Doc. 4, PILF's Motion to Expedite Preliminary Injunction Hearing, Doc. 11, Defendant Voter Registrar Ann Harris Bennett's ("Bennett") Motion to Dismiss PILF's Verified Complaint, Doc. 12, Bennett's Response in Opposition to the Preliminary Injunction, Doc. 13, PILF's Reply in support of the Preliminary Injunction, Doc. 15, PILF's Response to Bennett's Motion to Dismiss, Doc. 16, and Bennett's Reply, Doc. 19. After careful consideration of the filings, record, and law, the Court is of the opinion that Bennett's Motion to Dismiss should be granted, but PILF should be allowed to amend its Complaint, and that PILF's Motion for Preliminary Injunction should be granted in part.

**I. Background**

PILF alleges that it is a "non-partisan, public interest organization incorporated and based in Indianapolis, Indiana." Doc. 1 at 1. It seeks "to promote the integrity of elections" by dedicating "significant time and resources to ensure registration lists . . . are free

from . . . inaccuracies" in Texas and other jurisdictions. *Id*. PILF alleges that it turned its attention to Harris County, Texas, because the 2006 and 2015 Voter Registrars testified before Congress that voting by non-citizens had and would continue. *Id*. at 8–9. PILF also alleges that the 2015 Voter Registrar would discover and turn over the lists of suspected non-citizens to the Harris County District Attorney's Office on a monthly basis. *Id*. at 9.

PILF's Complaint explains briefly the history behind two contemporaneous filings in federal and state court: PILF's Complaint in federal court and Bennett's Petition in State Court. PILF requested a time and place to inspect "records related to your office's voter list maintenance obligations" ("list maintenance records") from 2006 to present from Bennett. Docs. 1 at ¶ 33–34; 1-1. A Harris County Attorney next sought clarification from PILF and noted that the request was being processed under the Texas Public Information Act ("TPIA"), TEX. GOV'T CODE ANN. § 552.001 *et. seq.*, and PILF responded that it sought access to the records under Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507, not TPIA. Doc. 1 at ¶ 36–37. Bennett then sought an opinion from the Texas Attorney General ("TAG") concerning whether the list maintenance records were exempted from disclosure under TPIA. *Id*. at ¶ 39–41. In response, PILF informed Bennet that she was in violation of the NVRA for refusing the inspection request. *Id*. at ¶ 42. Next, the Texas Attorney General issued an opinion allowing for redacted disclosure of some of the requested documents. *Id*. at ¶ 44. Because Bennett refused to produce any records, PILF initiated this lawsuit; and because Bennett asserts that TAG's opinion is error, Bennett initiated her lawsuit to clarify TAG's opinion.

On March 29, 2018, PILF filed their Complaint alleging that Bennett violated the NVRA by failing to make Harris County list maintenance records available to PILF. Doc. 1 at 1. PILF asserts that Section 20507(i) requires election officials to make available for public inspection

"all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id*. PILF also requested a declaration that "all of Defendant's records related to list maintenance . . . are subject to public inspection without encumbrance by any state public disclosure laws and must be preserved for such inspection." *Id*. at 1–2. Finally, PILF requested an injunction to command Bennet to permit "inspection and duplication of all records concerning the maintenance of registration lists." The specific list of requested documents is not reproduced herein, but is available at PILF's Exhibit A to the Complaint. Doc. 1-1. PILF alleges jurisdiction under 52 U.S.C. § 20507(b) and standing under § 20507(i). Doc. 1 at 2, 5.

Once it receives these records, PILF plans to bring election administrators into compliance by "meeting with election officials, crafting and proposing remedial solutions, and using the NVRA's private right of action provision to enforce the NVRA's obligation to maintain registration rolls free of ineligible registrants." Doc. 1 at 16–17.

On the same day, Bennett filed her Original Petition for Declaratory Judgment pursuant to TEX. GOV'T CODE ANN. § 552.324, seeking relief from a decision issued by Texas Attorney General Ken Paxton. Doc. 12-1 (referring to OR2018-06015). Bennet asserts that compliance with this order would cause Bennett to violate Texas Government Code Section 62.113 and conflicts with an earlier Texas Attorney General Order. Id. at 10 (citing TEX. GOV'T CODE ANN. § 62.113 and OR2013-00351 (Jan. 7, 2013)). Because of these conflicts of law, Bennett seeks a "declaratory judgment that the portions of OR 2018-06015 which require the Voter Registrar to release information is legally erroneous . . . and that the information . . . is exempt from disclosure under the Texas Public Information Act." *Id*. at 11.

Subsequently, Bennett filed her motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) & (6) and PILF filed its motion for preliminary injunction for preservation and immediate disclosure of list maintenance records. These motions are now ripe for consideration.

## II. Motion to Dismiss

Bennett moved to dismiss PILF's Complaint under Federal Rules of Civil Procedure 12(b)(1) because PILF "has no standing or private right of action under the NVRA" and 12(b)(6) because "[t]he information and documents requested by PILF are outside the scope of the NVRA's enumerated list maintenance activities." Doc. 12 at 1–2. As to the 12(b)(1) claim, Bennett goes onto assert that PILF does not "sufficiently allege how it has or could be injured under the facts set forth in its Complaint." *Id.* at 2.[1]

PILF responds that it has standing directly though the NVRA, and that the public disclosure provision of the NVRA requires disclosure, even if the list maintenance provision does not. Doc. 16.

### A. Legal Principles

*12(b)(1)*

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Halmekangas v. State Farm Fire and Cas. Co.*, 306 F.3d 290, 292 (5th Cir. 2010). It is fundamental that federal courts must establish subject matter jurisdiction prior to reaching the substantive claims of a lawsuit. *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 223 (5th Cir. 2012). If the court lacks either the statutory or constitutional authority to adjudicate a claim, then the claim shall be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

---

[1] Bennett, in a single paragraph, suggests that the Court should stay its proceedings pending the resolution of the state court clarification of the TAG's order. Doc. 12 at 2. PILF correctly points out that a motion to Stay should be a separate motion, and was not so presented. Doc. 16 at 14. Accordingly, the Court does not consider the stay request.

*Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, (1884).

When considering a jurisdictional challenge, a "court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). Thus, a court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir. 1989). The burden of proof lies with the party asserting jurisdiction. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).

*Standing*

As recently observed by a sister court, "An organization can demonstrate standing in two ways: associational standing and organizational standing." *Am. Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 787 (W.D. Tex. 2015). To establish associational standing, an organization must demonstrate that: "(1) 'its members would otherwise have standing to sue in their own right;' (2) 'the interests it seeks to protect are germane to the organization's purpose; and' (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Id.* at 787 (quoting *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). To establish organizational standing, an organization must demonstrate an injury, a causal connection, and redressability: (1) the organization suffered "an

injury in fact this is both 'concrete and particularized, and actual or imminent, not conjectural or hypothetical;'" (2) the injury is "fairly traceable to the challenged action of the defendant;" and (3) it is likely, "as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 787–88 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (footnote, citations, and internal quotation marks omitted); and citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)).

To establish standing under the NVRA, the plaintiff must still be "aggrieved," which means it must still meet the Article III standing requirements above. *Id*. at 803 n.17 (citing *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 362–63 (5th Cir. 1999)). Statutory standing alone is insufficient. *Id*. To allege NVRA organizational standing, an organization must allege (1) injury by alleging more than frustration of its mission, compiling of evidence, monitoring, and redirecting of litigation resources; (2) how the injury is traceable to the actions of that election official; and (3) how the election official could remedy the injury. *Id*. at 800 (citing *Fowler*, 178 F.3d 358–59). Otherwise, these alleged injuries are "simply setbacks 'to the organization's abstract social interests.'" *Id*. (citing *Havens*, 455 U.S. at 379).

In *American Civil Rights Union v. Martinez-Rivera*, the American Civil Rights Union ("ACRU") sued a Zavala County, Texas, Tax-Assessor for failing to conduct voter list maintenance programs under the NVRA. *Id*. at 784. Similar to PILF, the ACRU is a nonprofit corporation, "which promotes election integrity, compliance with federal election laws, government transparency and constitutional government." *Id*. at 785. The ACRU sued on behalf of members who were registered to vote in Texas after determining the voter registration rate for Zavala County was 102% and after numerous discussions with the Tax-Assessor. *Id*. The Tax-Assessor moved to dismiss the case asserting that the ACRU did not support either

organizational or associational standing. *Id*. at 786. ACRU alleged that the violations of the NVRA constituted statutory standing. *Id*. at 785, 803.

The *Martinez-Rivera* court, held that the ACRU did not have associational standing, but did have organizational standing. The ACRU alleged three injuries: (a) "confidence in the electoral system"; (b) "the risk of vote dilution"; and (c) "expend[ed] resources to compel compliance." *Id*. at 789. Neither of its first two allegations of "[(a)] undermined voter confidence and [(b)] potential voter dilution" supported either form of standing because both allegations were only "generalize[ed] grievance[s]" with an uncertain allegation as to how many "ineligible voters will actually vote." *Id*. at 787–89, 803.

The third allegation, (c) expended resources to compel compliance, sufficiently supported organizational standing. The ACRU supported the third allegation by referencing a statutory notice letter, discussions over seven months, and multiple visits made to the Tax-Assessor's office. *Id*. at 789. The court held that these (c) expended resources sufficiently targeted Zavala County to meet *Fowler's* (1) injury requirement in the context of a motion to dismiss. *Id*. at 790. As to the (2) causal connection, the court held that the Tax-Assessor had a duty as voter registrar to maintain lists, and therefore the actions of the ACRU were caused by her alleged failure to maintain those lists. *Id*. at 800. And as to whether the injury was (3) redressable, the court held that the ACRU provided U.S. Census evidence of a 102–05% alleged a violation which the Tax-Assessor could address by updating the voting rolls. *Id*. at 790–91. Having found injury, causal connection, and redressability, the *Martinez-Rivera* court held that the ACRU had organizational standing. *Id*. at 791.

Here, Bennett adopts the *Martinez-Rivera* standing analysis, asserting that PILF does not allege "any activity in Harris County," but instead plans to educate the public "regarding

noncitizen registration and voting" and "encourage remedial efforts" in the future. Doc. 12 at 6, 12. Thus, Bennett asserts that PILF fails to allege facts sufficient for standing. *Id*. at 11–12. The Court agrees and adopts the *Martinez-Rivera* analysis.

PILF lacks standing. Like the ACRU in *Martinez-Rivera*, PILF asserts that it seeks "to promote the integrity of elections" by dedicating "significant time and resources to ensure registration lists . . . are free from . . . inaccuracies." Doc. 1 at 1. PILF also intends to improve the voting lists by "meeting with election officials, crafting and proposing remedial solutions, and using the NVRA's private right of action provision to enforce the NVRA's obligation to maintain registration rolls free of ineligible registrants." Doc. 1 at 16–17. PILF alleges statutory standing under 52 U.S.C. § 20507(i), Doc. 1 at 5. Unlike the ACRU, PILF does not allege the statutory notice letter it submitted to Bennett, nor any discussions with Bennett prior to filling the law suit, nor visits it made to Bennett's office. Presuming without deciding that it met the NVRA's statutory requirements to assert a statutory right, PILF has not alleged facts sufficient to support an injury necessary for Article III standing. *See Martinez-Rivera*, 166 F. Supp. 3d at 789–91.

PILF responds that its standing does not depend on its "plans to use the information it has requested," Doc. 16 at 7, but the NVRA alone creates sufficient statutory standing, *id*. at 8. In support, PILF cites the Fifth Circuit's ruling on organization standing under the Emergency Planning and Community Right–to–Know Act ("EPCRA"), 42 U.S.C. § 11046(a). *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 429 (5th Cir. 2013). The *Center for Biological Diversity* appeal arose from "the disaster on the Deepwater Horizon drilling rig and the resulting massive oil spill that occurred at the Macondo well site in the Gulf of Mexico." *Id*. at 417.

But the *Center for Biological Diversity* case is distinguishable first because the EPRCA and NVRA have different statutory schemes and purposes, and second, in addition to the well-documented nature of the *Deepwater Horizon* oil spill, the Center "provided affidavits from its members averring that they has been exposed to substances emanating from the disaster." *Id*. at 429. One member specifically averred that no reports were available. *Id*. The Court of Appeals for the Fifth Circuit held that this lack of information was the kind of concrete informational injury that the statute was designed to redress. *Id*.

Here, PILF provides congressional testimony that non-citizen voting does occur, but the Voter Registrar turns over that information to the Harris County District Attorney for prosecution. Doc. 1 at 9. According to the information alleged by the more recent Voter Registrar, Harris County knows and takes action against voter fraud. Analogously, the not all of the same information is lacking, nor is it leading to the same adverse result. Accordingly, it is hereby

**ORDERED** that Bennett's Motion to Dismiss is **GRANTED**, and Bennett's 12(b)(6) claim is **MOOT**, but "the court should generally give the plaintiff at least one chance to amend the complaint under rule 15(a) before dismissing the action." *See generally Champlin v. Manpower Inc.*, No. 4:16-CV-421, 2016 WL 3017161, at *2 (S.D. Tex. May 26, 2016) (citing *Great Plains Trust Co. v. Morgan Stanely Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) in the 12(b)(6) context). The court should only deny leave to amend if it determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face. 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1487 (2d. ed. 1990); *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 994 (S.D. Tex. 2011). Accordingly, it is further

**ORDERED that** PILF is permitted 21 days to amend its Complaint.

### III. Preliminary Injunction

In its Motion for Preliminary Injunction, PILF requests that the Court compel Bennett to "(1) preserve all election list maintence records requested by the Foundation and (2) to fulfil her obligation under federal law to make voter registration list maintenance records available for public inspection." Doc. 3 at 1.[2] Because it found above that PILF has not properly alleged standing, the Court need not determine whether PILF is entitled to a preliminary injunction. But the records under dispute should be preserved pending the resolution of this litigation.

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 963 (S.D. Tex. 2010). Accordingly, it is hereby

**ORDERED** that Bennett shall not modify, alter, or destroy the records under dispute and to the extent there are internal document retention policies or any program or policy that provides for the automated archiving, destruction or overwriting of documents/records, Bennett shall take all steps necessary to ensure that she does not interfere with this document preservation order. It is further

**ORDERED** that all other pending motions are denied as MOOT.

### IV. Conclusion

In summary, for the foregoing reasons, the Court hereby

---

[2] PILF alleges that it needs the records now because "Election officials must 'complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters.' 52 U.S.C. § 20507(c)(2)." Doc. 3 at 18. The law may allow, however, for a State to remove non-citizens after this period. *Cf. United States v. Florida*, 870 F. Supp. 2d 1346, 1349–50 (N.D. Fla. 2012).

**ORDERS** that Bennett's Motion to Dismiss, Doc. 12 is **GRANTED**, PILF's Motion for Preliminary Injunction, Doc. 3, is **GRANTED** in part and **DENIED** in part, and PILF's Motion to Consolidate, Doc. 4, is **DENIED** as moot, and that PILF is permitted 21 days to amend its Complaint.

SIGNED at Houston, Texas, this 6th day of June, 2018.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE