Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TEXAS LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al., | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § | CIVIL ACTION NO. SA-19-CA-074-FB |
| DAVID WHITLEY, et al., | § § § | |
| *Defendants.* | § § | |

AND

| | | |
|---|---|---|
| JULIE GARIBAY, et al., | § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO. SA-19-CA-159-FB |
| DAVID WHITLEY, et al., | § § | |
| *Defendants.* | § § § | |

AND

| | | |
|---|---|---|
| MOVE TEXAS CIVIC FUND, et al., | § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO. SA-19-CS-171-FB |
| DAVID WHITLEY, et al., | § § | |
| *Defendants.* | § § § | |

**SETTLEMENT AGREEMENT**

1

# I. PARTIES TO THE AGREEMENT

This settlement agreement and release of claims (the "Agreement") is made by and between all parties to the three cases (SA-19-CA-074-FB; SA-19-CA-159-FB; and SA-19-CA-171-FB) that the Court consolidated by its February 22, 2019 Order, ECF No. 39, (the "Litigation"). The parties to this Agreement include the following:

All plaintiffs in Civil Action No. SA-19-CA-074-FB (the "LULAC Plaintiffs"):

- Texas League of United Latin American Citizens
- National League of United Latin American Citizens
- Julie Hilberg

All plaintiffs in Civil Action No. SA-19-CA-159-FB (the "Garibay Plaintiffs"):

- Julieta Garibay
- Maria Yolisma Garcia
- Lorena Tule-Romain
- Abraham Josue Espinosa Flores
- Viridiana Tule Carrizales
- Efren Gomez
- Elena Keane
- Organization of Chinese Americans-Greater Houston
- Jane Doe #3
- Hilda Castillo
- Southwest Voter Registration Education Project
- Mi Familia Vota Educational Fund
- La Union De Pueblo Entero, Inc.
- Jane Doe #2
- UnidosUS
- Jane Doe #1
- John Doe #1
- Maria Felicitas Barbosa
- Martine Hummel

All plaintiffs in Civil Action No. SA-19-CA-171-FB (the "MOVE Plaintiffs"):

- MOVE Texas Civic Fund
- JOLT Initiative
- League of Women Voters of Texas
- Nivien Saleh

All officials named as defendants in all three consolidated cases (the "State Defendants") including:

- Texas Secretary of State David Whitley
- Texas Attorney General Ken Paxton
- Texas Governor Greg Abbott
- Texas Director of Elections Keith Ingram

In the remainder of this Agreement, the above parties to the consolidated cases are collectively referred to as the "Parties."

## II. GENERAL STATEMENT OF PURPOSE

1. This Agreement is the result of discussions conducted among representatives of all the Parties. The purpose of those discussions was to discuss resolution of the Litigation related to Election Advisory 2019-02. Bona fide legal disputes and controversies exist among the Parties regarding matters related to Election Advisory 2019-02 and the related data matching process. The Parties, through their respective counsel, have conferred and agreed that these consolidated actions should be settled without further delay and further expense. The Parties negotiated in good faith and agree that this Agreement is an appropriate resolution of the claims alleged by the plaintiffs.

2. Section III of this Agreement sets forth a process to which the Parties have agreed, subject to the limitations and reservation of rights set forth below, as a condition of settling Plaintiffs' claims. This process is intended to replace the process adopted and referenced in Election Advisory 2019-02. The Parties agree that the goal of this process is to guide the Texas Secretary of State in performing a list-maintenance procedure by matching DPS data regarding potential non-U.S citizens to Texas's voter registration database to assist counties in ensuring that only eligible voters are registered to vote while minimizing the impact on naturalized citizens.

3. In return for the Secretary of State replacing the process adopted and referenced in Election Advisory 2019-02, the plaintiffs agree to dismiss all of their claims with prejudice against

all of the defendants and release the defendants from all liability related to Election Advisory 2019-02 as fully described below.

4. In consideration of the recitals set forth above, the mutual promises, agreements, covenants, and provisions herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree that the Litigation shall be fully and finally settled and compromised based on the following terms and conditions.

### III. DETAILS OF AGREED MATCHING PROCESS

5. Section III of this Agreement outlines the understandings and agreements of the Parties related to the agreed matching process to be utilized by the Secretary of State, consistent with the purposes described in Section II.

6. The Secretary of State and the Plaintiffs engaged in negotiations in an attempt to improve the process by which the Secretary of State will conduct list-maintenance activities using DPS data. The Parties agree that the goal of this process is to guide the Texas Secretary of State in performing a list-maintenance procedure by matching DPS data regarding potential non-U.S citizens to Texas's voter registration database to assist counties in ensuring that only eligible voters are registered to vote while minimizing the impact on naturalized citizens.

<u>Election Advisory 2019-02</u>

7. Within five days of the entry of the order dismissing all three consolidated cases, the Secretary of State will rescind Election Advisory 2019-02 and advise county voter registrars and elections administrators to take no further action on any data files that the Secretary of State sent them in connection with Election Advisory 2019-02. This includes the original data files provided to county officials on January 26, 2019, and any subsequent data files sent in connection with Election Advisory 2019-02 or Election Advisory 2019-03. For online counties and any offline

counties using the dashboard, the Secretary of State will close as "resolved" any tasks his office created in the TEAM database in connection with Election Advisory 2019-02. The Secretary of State shall advise county voter registrars and elections administrators that any voter who received a notice that their voter registration status was in question in connection with Election Advisory 2019-02 shall receive written notice that they are still registered to vote and that their voter registration status is no longer in question, unless the voter has since contacted the registrar and asked to be removed from the voter registration rolls, or unless there is some other basis for investigating the eligibility of the voter.

New Superset

8. The Secretary of State will obtain from DPS a list of all individuals who are at least 18 years old and who hold a current (unexpired) driver's license or personal identification card and presented to DPS documents indicating non-U.S. citizenship at their last DPS visit in which they were issued a new or renewed driver's license or personal identification card. DPS verifies the validity of documents indicating non-U.S. citizenship (lawful presence documents) through the SAVE database at the time of the person's DPS visit. These records will not utilize a match criteria based on individuals who obtained a replacement driver's license or personal identification card or changed their personal information such as name or address before the expiration of their existing driver's license or personal identification card. The Secretary of State will not request— and has never requested—that the DPS data disclosed to the Secretary of State as part of any non-U.S. citizen matching process contain the race or ethnicity of any individual.

9. The Secretary of State will match those DPS records with the voter registration database using the following criteria:

    a. Last Name (including Former Last Name on the Voter Record), First Name, and Full Social Security Number (9 digits);

      b. Last Name (including Former Last Name on the Voter Record), First Name, and DPS-Issued Driver License or Personal Identification Card Number; or

      c. Last Name (including Former Last Name on the Voter Record), First Name, Last Four Digits of the Social Security Number, and Date of Birth.

These criteria are used to maximize the likelihood that the individual identified in the DPS database is the same individual identified in the TEAM database.

      10. Utilizing this process, the Secretary of State will identify only currently registered voters who registered to vote before they presented documents to a DPS office indicating non-U.S. citizenship. That will be determined by comparing the effective date of a person's voter registration to the date on which DPS validated the person's non-U.S. citizen lawful presence documents using the SAVE database and issued the person's current driver's license or personal identification card to that person. Because Texas law provides that voter registration does not become effective until 30 days after a voter submits a registration form, the matching process will include voters whose effective date of registration is up to 30 days after the date on which they presented documents to a DPS office indicating non-U.S. citizenship. Thus, the Secretary of State will send to county voter registrars and elections administrators only the records of voters whose effective date of voter registration is prior to, or no more than 30 calendar days after, the issuance date of the voter's current driver's license or personal identification card for which he or she proved lawful presence but not U.S. citizenship.

      <u>Weekly Updates</u>

      11. The Secretary of State may also obtain potential non-U.S. citizen data from DPS on a weekly basis. The records will be limited to all individuals who are at least 18 years old and who hold a current (unexpired) driver's license or personal identification card and presented to DPS evidence of non-U.S. citizenship (with lawful presence documentation that was verified through the SAVE database by DPS) at their last DPS visit in which they were issued a new or renewed

driver's license or personal identification card in the previous week. This weekly data will not include individuals who obtained a replacement driver's license or personal identification card or changed their personal information such as name or address before the expiration of their existing driver's license or personal identification card.

12. After receiving the weekly files from DPS, the Secretary of State will process the data in the same manner as the procedures used for the superset data as explained in paragraphs 9 and 10 above. Thus, the Secretary of State will match the weekly DPS records with the voter registration database using the three sets of criteria identified above and send to the county voter registrars and elections administrators only the records of voters whose effective date of voter registration is prior to, or no more than 30 calendar days after, the issuance date of the voter's current driver's license or personal identification card for which he or she proved lawful presence but not U.S. citizenship.

Daily Updates

13. DPS will send to the Secretary of State on a daily basis the record of any person who was identified in the new superset or any weekly file provided to the Secretary of State as detailed above and whose "U.S. Citizen" field changed from "No" to "Yes." The Secretary of State will then send those records that match a voter record to the relevant county voter registrars and elections administrators within two business days. The Secretary of State shall continue the daily update process for so long as the Secretary of State is utilizing the weekly DPS data update process described above.

IV. IMPLEMENTATION OF NEW PROCESS

14. The Secretary of State will inform counsel for the plaintiffs of the total number of DPS records provided to the Secretary of State pursuant to paragraph 8 above and the total number of

voter records identified in the superset matching process detailed in paragraphs 9 and 10 above ten days before sending those matching records to the county voter registrars and elections administrators. The Secretary of State will inform counsel for the plaintiffs of the total number of DPS records provided to the Secretary of State pursuant to paragraph 11 above and the total number of voter records identified in the weekly matching process detailed in paragraph 12 above three days before sending those records to the county voter registrars and elections administrators for the first three batches of such data sent to the counties.

15. The Secretary of State agrees to maintain the number of matched records sent to county voter registrars and elections administrators pursuant to paragraphs 10 and 12 above for a period of two years from the date that the Secretary of State sends such records to the counties. The Secretary of State also agrees to maintain the number of voters whose registration is canceled by county voter registrars and elections administrators for (a) non-U.S. citizenship for a period of five years; and (b) failure to respond to a notice within 45 days of the counties receiving the names of the voters sent pursuant to the agreed matching process for a period of two years from the date of cancellation. The parties agree that the number reflected in subsection (b) is over-inclusive and may not accurately reflect the number of voters canceled as a result of the agreed matching process. This paragraph is not intended to describe the full responsibilities of the Secretary of State to maintain list maintenance documents pursuant to the National Voter Registration Act.

16. The Secretary of State will create new written training material that it will provide to the county voter registrars and elections administrators detailing how the DPS data was compiled and compared against the voter registration database. The Secretary of State will provide the counties with a new election advisory that replaces Advisory 2019-02 and accompanies the initial release of the superset data. That training material and advisory will advise county voter registrars

and elections administrators to treat these records as weak matches and that they may not immediately cancel any voter's registration. The training material and advisory will advise the county voter registrars and elections administrators that they may investigate whether a voter is currently eligible for registration in the county using any lawful means at their disposal. The Secretary of State will provide guidance on some of the means that may be available for counties to investigate voter eligibility. Pursuant to Section 16.033 of the Texas Election Code, if the voter registrar has a reason to believe that the person is no longer eligible for registration, the registrar shall send a notice of examination, as described in paragraph 17, to the person indicating that the voter's registration status is being reviewed by the registrar. The Secretary of State may advise the counties that, based on the refinement of the DPS data and the strict matching criteria that the Secretary of State is utilizing to generate an identity match, it is the Secretary of State's position that a voter's presence on the list of matches provides a county with reason to believe that the identified voter is no longer eligible for registration if the county's independent investigation does not demonstrate that the individual is a U.S. citizen. The Secretary of State will advise the counties on the acceptable ways in which a voter can prove U.S. citizenship after receiving a notice of examination. That includes by presenting a copy in the manner described in paragraph 17 of a U.S. birth certificate or a Consular Report of Birth Abroad of a Citizen of the United States issued by the United States Department of State, U.S. passport, certificate of naturalization, or certificate of naturalization of the voter's parent (along with the voter's foreign birth certificate) that allowed the voter to become a U.S. citizen while he or she was a minor. The notice also informs voters of their right to request a hearing to challenge their cancellation under Texas Election Code, sections 16.061-16.066. The Secretary of State will advise the counties that voters whose registration is canceled after being sent a notice of examination but later prove their U.S. citizenship at the polling

place or to the voter registrar shall be reinstated (as opposed to re-registered) immediately as permitted by Texas Election Code Section 16.037.

17. The Secretary of State will post a new form on its website, titled "Notice to Registered Voter for Proof of Citizenship," exclusively for notices of examination that voter registrars would issue resulting from the matching process described in this Agreement. A copy of that Notice is attached as Exhibit A to this Agreement. The updated notice addresses concerns raised by the Court regarding the existing notice (Form BW1-12), to the extent permitted by federal and state law, including informing voters that they can provide proof of U.S. citizenship by personal delivery, mail, facsimile, electronic mail, or any other method of transmission. The notice shall be promulgated in all languages required in Texas jurisdictions under Chapter 272 of the Texas Election Code and Section 203 of the Voting Rights Act, 52 U.S.C. § 10503.

18. The Plaintiffs do not concede that Tex. Elec. Code § 16.033 as currently written and enforced by the Secretary of State complies with the requirements of the National Voter Registration Act and expressly reserve the right to bring suit under the NVRA for claims arising out of Tex. Elec. Code § 16.033 other than those expressly disclaimed herein as set forth with limitations and reservation in paragraph 28.

## V. ADDITIONAL TERMS AND CONDITIONS

19. This Agreement does not preclude the Secretary of State from advising county voter registrars and elections administrators to determine the eligibility of a voter who was mistakenly registered due to a clerical error by the county, including any registrants who indicated they were not U.S. citizens on their voter registration application but were nevertheless registered to vote by the county.

20. Nothing in this Agreement shall prevent the Secretary of State from reducing the impact of list maintenance on naturalized citizens by obtaining verifiable information relating to a voter's U.S. citizenship status from a federal governmental entity, including through the U.S. Department of Homeland Security's Systematic Alien Verification for Entitlements Program, and providing such information to county voter registrars and elections administrators for examination of voter eligibility. Nothing in this Agreement shall be construed to waive, release, or discharge any claim Plaintiffs have or may have in the future over such newly adopted procedures, or any procedures or list maintenance procedures not explicitly described herein, under federal or state law.

21. This Agreement applies only to how the Secretary of State will match data from DPS regarding potential non-U.S. citizens with Texas's voter registration database based on the manner in which DPS currently collects data about U.S. citizenship. This Agreement does not affect or limit how the Secretary of State may use any other data obtained from DPS. This Agreement does not affect or limit how the Secretary of State may use DPS data regarding potential non-U.S. citizens if DPS changes its methods of collecting data regarding U.S. citizenship. This Agreement does not affect or limit the Secretary of State's ability to assist counties in identifying non-U.S. citizen voters through any other means or to conduct any other type of list maintenance on Texas's voter rolls. Nothing in this Agreement shall be construed to waive, release, or discharge any claim Plaintiffs have or may have in the future over any list maintenance procedure not explicitly described herein, including any use of DPS data regarding potential non-U.S. citizens collected through any other method other than that described herein, or any other process or procedure used by the Secretary of State to assist counties in identifying non-U.S. citizens on the voter registration rolls.

22. This Agreement does not supersede, and is not intended to supersede, any of the defendants' obligations under federal or state law, whether such obligations exist now or at any time while this Agreement is effective. If Defendants later assert that any such federal or state law obligations require Defendants to modify the list maintenance procedures outlined herein, Plaintiffs reserve the right to bring any claim under federal or state law challenging such modifications.

23. Nothing in this Agreement affects the authority or ability of the Texas Attorney General to investigate and prosecute acts of voter fraud over which the Attorney General has jurisdiction, nor does it affect the rights, if any, of the Plaintiffs to challenge future investigations and prosecutions, if any.

24. Nothing in this Agreement, or any action taken under this Agreement, is an admission of liability—nor should it be interpreted as an admission of liability—by any of the defendants, or by any current or former employee, agent, or representative of the defendants.

25. If there is cause to believe that a breach of this Agreement has occurred, the Parties agree that all claims of breach shall be adjudicated through a new lawsuit brought in state or federal court in the Western District of Texas (San Antonio Division).

26. The Secretary of State will pay the plaintiffs a total of $450,000 for the plaintiffs' fees and cost incurred in the litigation of this case through checks payable to Brazil and Dunn LLP. The plaintiffs shall provide the Secretary of State with its IRS Form 1099 for the payee, and the Secretary of State shall make payment on or before September 5, 2019. The Parties agree that other than the payment of the $450,000, each party will bear its own fees and costs incurred in this Litigation.

27. The Parties agree to file joint motions to dismiss all of the Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 41(a)(2) within three calendar days of the effective date of this Agreement. The Parties understand and agree that the enforceability and validity of this Agreement are expressly conditioned upon entry of an order by the United States District Court for the Western District of Texas, San Antonio Division, dismissing all of the plaintiffs' claims against all of the defendants in all of the consolidated cases in their entirety with prejudice.

28. The plaintiffs hereby knowingly and voluntarily agree to fully, finally, and forever unconditionally release, acquit, and discharge all of the defendants, their agents and employees, including their attorneys and former employees (the "Releasees"), from any and all debts, demands, actions, causes of action, suits, accounts, covenants, contracts, agreements, damages, losses, expenses (including attorneys' fees and costs incurred), claims or rights under any and all federal and state laws, and any and all claims, demands and liabilities whatsoever of every name and nature, both in law and in equity, whether known or not, which the plaintiffs now have or ever had (including any claims in relation to this Litigation under the National Voter Registration Act) asserted in this Litigation or related to Election Advisory 2019-02 or the process described in paragraphs 7 through 13 against the defendants and Releasees, up to and including the date the Parties sign this Agreement. Notwithstanding the foregoing, the plaintiffs may bring an action to enforce the provisions of this Agreement as provided for in paragraph 25. The Plaintiffs agree to withdraw any outstanding NVRA notices related to Election Advisory 2019-02. Notwithstanding the foregoing, nothing shall preclude Plaintiffs from making any future request for documents to which they are entitled under the NVRA related to the list maintenance procedures described in this Agreement or from bringing an action related to such requests for documents. Nothing in this Agreement prevents the plaintiffs or their counsel from bringing an action against the Secretary of

State if data, methodological, or other systemic limitations cause the lists generated by the procedures outlined herein to include registered voters who did not submit documents establishing non-U.S. citizenship to DPS after their date of voter registration.

29. The individuals whose signatures are affixed to this Agreement in a representative capacity represent and warrant that they are authorized to execute this Agreement on behalf of, and to bind, the entity on whose behalf the signature is affixed.

30. The Parties acknowledge they have had the right to consult with an attorney before signing this Agreement. The Parties represent and warrant they have read this Agreement and reviewed it with their counsel, and further represent and warrant that they have executed this Agreement of their own free will and accord without further representation of any kind or character not expressly set forth herein.

31. This Agreement shall be construed as if all Parties jointly prepared it, and any uncertainty or ambiguity in this Agreement shall not be interpreted against any one Party.

32. This Agreement contains the entire understanding of the Parties hereto, supersedes any and all prior agreements or understandings, statements, promises, or inducements contrary to the terms of this Agreement, and shall not be amended except by written instrument expressly referring to this Agreement and signed by all of the Parties hereto.

33. This Agreement is binding on the Parties, their successors in office, employees, representatives, delegates, agents, assigns, and all persons acting on their behalf, to the extent permitted by law or required by this Agreement.

34. This Agreement may be executed in counterparts, each of which shall constitute an integrated and enforceable whole.

[Remainder of page left intentionally blank. Signature page follows.]

IN WITNESS WHEREOF, the undersigned, having represented and warranted their authority to enter into and execute this Agreement, have executed this Agreement effective as of the last date written below.

_____    _____
**[Signatory for the LULAC Plaintiffs]**                DATE

_____    _____
**[Signatory for the Garibay Plaintiffs]**              DATE

_____    _____
**[Signatory for the MOVE Plaintiffs]**                 DATE

_____    _____
**[Signatory for the Texas Secretary of State]**        DATE

_____    _____
**[Signatory for the Texas Attorney General]**          DATE

_____    _____
**[Signatory for the Texas Governor]**                  DATE

_____    _____
**[Signatory for the Texas Director of Elections]**     DATE

**EXHIBIT A**

[COUNTY LETTERHEAD]
_____ County Voter Registrar

Mailing Address
Physical Location
Phone Number
Fax Number
Email Address
Website
TDD/TTY Phone

## NOTICE TO REGISTERED VOTER FOR PROOF OF CITIZENSHIP

Dear Voter:

As the voter registrar for _____ County, I am writing to notify you of important information regarding your voter registration.

You are currently registered to vote in this county. We have received information from the Texas Secretary of State reflecting that you might not be a United States citizen. The Texas Department of Public Safety's records show that the most recent time you obtained a Driver License or Personal Identification Card, you indicated that you were not a United States citizen. Although you can obtain a Driver License or Personal Identification Card as a non-United States citizen, only United States citizens are eligible to vote.

To maintain your active voter registration status, please provide proof that you are a United States citizen. Proof of United States citizenship can be established by presenting a copy of any of the following documents:
- U.S. birth certificate or a Consular Report of Birth Abroad of a Citizen of the United States issued by the United States Department of State;
- United States passport;
- Certificate of Naturalization or Certificate of Citizenship; or
- Your parent's Certificate of Naturalization along with your birth certificate if you became a U.S. citizen as a result of your parent's naturalization.

There are several ways to provide proof of U.S. citizenship to my office. You can deliver it by hand, or you can send it by mail, fax, electronic mail, or any other method of transmission. My office's contact information is listed at the top of this letter.

**Please provide proof of U.S. citizenship within thirty (30) days from the date of this letter. If we do not receive a response from you within thirty (30) days, your voter registration will be cancelled.** In the event that your registration is cancelled, you can still be immediately reinstated by providing proof of U.S. citizenship to my office or at your polling location, even if the thirty (30)-day period has already passed. You may also request a hearing to challenge your cancellation, even if you do not possess one of the above forms, by contacting my office.

If you have any questions regarding this notice or your voter registration, please contact my office at _____ (phone number).

_____     _____
Signature of Voter Registrar                                              Date