# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

PUBLIC INTEREST LEGAL FOUNDATION,   )
                                      )
              *Plaintiff,*        )
                                        )
      v.                        )     Civil Action No. 4:18-cv-00981
                                        )
ANN HARRIS BENNETT, in her official capacity  )
as voter registrar for Harris County, Texas,     )
                                        )
             *Defendant.*      )
_____)

**PLAINTIFF PUBLIC INTEREST LEGAL FOUNDATION'S
OBJECTIONS TO THE MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION TO STAY OR ABSTAIN AND
<u>ABATING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 62)</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

SUMMARY OF THE ARGUMENT ............................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 3

STANDARD OF REVIEW ......................................................................................... 5

    I.   Review of the Stay Order ................................................................................. 5

    II.  Abstention Standard ........................................................................................ 6

ARGUMENT ............................................................................................................. 6

    I.   The NVRA's Preemptive Effect on Inconsistent State Laws Renders
        the Stay Order Inappropriate and Unnecessary ............................................... 6

        A.  State Law that Conflicts with the NVRA Is Preempted and Superseded
             Under the Constitution's Supremacy Clause ......................................... 6

        B.  This Court Should Resolve Issues of Preemption Before Ruling on
             the Propriety of the Stay Request .......................................................... 10

    II.  The 459th Civil District Court in Travis County Lacks Jurisdiction to
         Hear the Petition on Which the Stay Order Is Based ...................................... 10

    III. The Requirements of the *Younger* Abstention Doctrine Are Not Satisfied .......... 11

        A.  The Limits of the *Younger* Abstention Doctrine ................................... 12

        B.  The State Court Action Is Not One of the Three Exceptional
             Circumstances for Which *Younger* Abstention Applies ........................ 14

        C.  The Relief Sought In This Action Will Not Interfere with the
             State Court Action ................................................................................ 15

        D.  The Stay Order Erred in Its Application of the *Middlesex* Factors ......... 17

           i.   The Stay Order Erred By Treating the *Middlesex* Factors
               as Dispositive .............................................................................. 17

           ii.  The *Middlesex* Factors Do Not Support Abstention ..................... 18

CONCLUSION ......................................................................................................... 20

# TABLE OF AUTHORITIES

*Cases*

*Acra Turf Club, Ltd. Liab. Co. v. Zanzuccki,*
    748 F.3d 127 (3d Cir. 2014)................................................................13

*ACORN v. Edgar,*
    880 F. Supp. 1215 (N.D. Ill. 1995) ..........................................................8

*Arizona v. Inter Tribal Council of Ariz., Inc.,*
    570 U.S. 1 (2013).....................................................................................8

*Barrow v. Greenville Indep. Sch. Dist.,*
    202 F.R.D. 480 (N.D. Tex. 2001) ............................................................6

*Becker-Jiba Water Supply Corp. v. City of Kaufman,*
    2003 U.S. Dist. LEXIS 10334 (N.D. Tex. June 18, 2003) .................15, 18 n.6, 20 n.8

*Bellitto v. Snipes,*
    No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617 (S.D. Fla. Mar. 30, 2018).............10

*Bennett v. Paxton,*
    Cause No. D-1-GN-18-001583 (459th District Court, Travis County) ........................4

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976)................................................................ 6, 12-13, 16

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000).................................................................................7

*Freightliner Corp. v. Myrick,*
    514 U.S. 280 (1995).................................................................................9

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n,*
    505 U.S. 88 (1992)...................................................................................9

*Gibson v. Berryhill,*
    411 U.S. 564 (1973)...............................................................................20

*Google, Inc. v. Hood,*
    822 F.3d 212 (5th Cir. 2016) .................................................................13

*Gregory v. Ashcroft,*
    501 U.S. 452 (1991).................................................................................8

*Haw. Hous. Auth. v. Midkiff,*
    467 U.S. 229 (1984)...............................................................................18

*Hines v. Davidowitz,*
    312 U.S. 52 (1941)...................................................................................8

*Huffman v. Pursue, Ltd.,*
    420 U.S. 592 (1975)...............................................................................13

*Jones v. Prescott,*
    702 F. App'x 205 (5th Cir. 2017) ...........................................................15

iii

*Judicial Watch, Inc. v. Lamone*,
    No. ELH-17-2006, 2019 U.S. Dist. LEXIS 134151 (D. Md. Aug. 8, 2019) ................9

*Juidice v. Vail*,
    430 U.S. 327 (1977)...............................................................................................13

*Lahr v. Fulbright & Jaworski, LLP*,
    164 F.R.D. 204 (N.D. Tex. 1996) ...........................................................................6

*Middlesex County Ethics Commission v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982) ........................................................... 2 n.1, 16, 17-19,

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
    491 U.S. 350 (1989) ..................................................................... 14, 16-17

*ODonnell v. Harris County*,
    227 F. Supp. 3d 706 (S.D. Tex. 2016).....................................................................20

*Pennzoil Co. v. Texaco Inc.*,
    481 U.S. 1 (1987) .................................................................................................13

*Project Vote/Voting for Am., Inc. v. Long*,
    813 F. Supp. 2d 738 (E.D. Va. 2011) ....................................................................8

*Project Vote/Voting for Am., Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012).................................................................................8

*PLIVA, Inc. v. Mensing*,
    564 U.S. 604 (2011) ..............................................................................................7

*Rivas v. United States Bank Nat'l Ass'n*,
    2015 U.S. Dist. LEXIS 164401 (S.D. Tex. Dec. 8, 2015) ............................................5

*Roach v. Ingram*,
    557 S.W.3d 203 (Tex. App. 2018)...........................................................................11

*Spivey v. Barry*,
    665 F.2d 1222 (D.C. Cir. 1981) ...........................................................................19

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013)....................................................................... *passim*

*Tolan v. Cotton*, No. H-09-1324,
    2015 U.S. Dist. LEXIS 121717 (S.D. Tex. Sep. 14, 2015) .........................................6

*Trainor v. Hernandez*,
    431 U.S. 434 (1977)...............................................................................................14

*United States v. Stevens*,
    487 F.3d 232 (5th Cir. 2007) .................................................................................5

*Webb v. B.C. Rogers Poultry, Inc.*,
    174 F.3d 697 (5th Cir. 1999) .................................................................................6

*Wightman v. Tex. Supreme Ct.*,
    84 F.3d 188 (5th Cir. 1996) ..................................................................................18

*Wooley v. Maynard,*
    430 U.S. 705 (1977)........................................................................17

*Younger v. Harris,*
    401 U.S. 37 (1971).................................................................. *passim*


*Statutes*

52 U.S.C. § 20507(i) ......................................................................11

52 U.S.C. § 20507(i)(1) ...................................................................3

52 U.S.C. § 20510........................................................................2

52 U.S.C. § 20510(b) ....................................................................4

Texas Government Code § 62.113 ...........................................7, 9, 19

Texas Government Code § 552.001 ...........................................3, 10

Texas Government Code § 552.301...............................................3

Texas Government Code § 552.324 ............................................4, 11

Texas Government Code § 552.327 ...............................................11

Texas Election Code § 16.0332 ...................................................8


*Other Authorities*

Civil Procedure 6(C) of Judge Andrew S. Hanen ........................2 n.2

Procedures of Magistrate Judge Frances H. Stacey 4(a)..............2 n.2

Southern District of Texas Local Rule 7.1(D) ............................2 n.2

Southern District of Texas Local Rule 11.4................................2 n.2

Plaintiff Public Interest Legal Foundation (the "Foundation"), pursuant to Federal Rule of Civil Procedure 72(a), hereby files its Objections to the Memorandum and Order (Doc. 62) entered on August 14, 2019 by the Honorable United States Magistrate Judge Frances H. Stacy (hereafter, the "Stay Order"). For the following reasons, the Foundation's Objections should be sustained, Defendant's Motion to Stay or Abstain (Doc. 49) should be denied, and the Foundation's Motion for Summary Judgment (Doc. 34) should be set for hearing and argument.

## SUMMARY OF THE ARGUMENT

The Foundation's objections should be sustained for at least five reasons. **First**, under any standard, a stay of this action pending a determination of the scope of *state* open records law is not warranted because any state law that prevents disclosure of voter list maintenance records is superseded and preempted by the Supremacy Clause and the National Voter Registration Act of 1993 ("NVRA").

**Second**, a stay is not warranted because there is no valid state court proceeding on which abstention or a stay could rest. The Foundation never made a public records request under Texas law. The Foundation's only request was made pursuant to federal law—the NVRA. Because no request under the Texas Public Information Act ("TPIA") has ever existed, there is no dispute to resolve in state court, and the District Court in Travis County therefore lacks jurisdiction. Further, the Foundation has moved to dismiss VR Bennett's state court proceeding on these grounds, as well as for want of prosecution. (*See* Exhibit A.)

**Third**, this case does not fit into one of the three "exceptional circumstances" for which *Younger* abstention applies. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (*Sprint*).

**Fourth**, the relief sought in this action will not cause "undue interference" with the state court proceeding. *Sprint*, 571 U.S. at 72. Whatever this Court's decision regarding the scope of

1

the NVRA, it will not enjoin or otherwise dictate the course of VR Bennett's state law dispute. That much alone should end the inquiry. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 816 (1976) ("[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction[.]").

**Fifth**, the Stay Order erroneously treated the *Middlesex*[1] factors as dispositive, in contravention of Supreme Court precedent, *Sprint*, 571 U.S. at 81. Even to the extent they are relevant, the Stay Order erred by finding that all three factors support abstention. *Younger* abstention is appropriate only where the federal plaintiff has an "adequate remedy at law" in state court. Here, the Foundation has no legal remedies and thus *Younger* is not appropriate.

Simply put, VR Bennett's requested stay is another attempt, in a long line of attempts, to delay, stall, and avoid having to produce the public records requested by the Foundation nearly *twenty-one months* ago that relate to the administration of elections in Texas. The state statute that purports to limit disclosure may be a legitimate state records exemption, but that is of no import under the NVRA. It can never stand as an obstacle to the accomplishment of Congress's objectives. Any effort to do so is preempted, superseded, and invalid.

Federal courts are the exclusive forum for actions to enforce the NVRA. 52 U.S.C. § 20510. The Stay Order effectively empowers the state court to determine the Foundation's federal inspection rights based on the disclosure limits of *state law*. The Supremacy Clause does not allow that. For these reasons, and others below, the Stay Order should be vacated.[2]

---

[1] *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

[2] Procedurally, the Motion to Stay or Abstain was not properly before Judge Stacy because VR Bennett failed to meet and confer and did not include a certificate of conference with the motion. Local Rule 7.1(D); Procedures of Magistrate Judge Frances H. Stacy 4(a); Judge Andrew S. Hanen's Civil Procedures 6(C). The Motion should be struck. Local Rule 11.4

## FACTUAL AND PROCEDURAL BACKGROUND

The National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. 20501 *et seq.*, requires election administration officials to "make available for public inspection … all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (hereafter, the "Public Disclosure Provision"). The records described by the Public Disclosure Provision are commonly referred to as "voter list maintenance records."

On December 1, 2017— **635 days ago** —the Foundation submitted a written request to VR Bennett asking to inspect voter list maintenance records concerning efforts to keep non-citizens off of Texas voter rolls. (Doc. 21 ¶ 10; Doc. 21-1 (copy of request).) The letter explicitly stated that the request for inspection of records was made pursuant to federal law—the NVRA's Public Disclosure Provision. (*Id.*)

VR Bennett ignored the federal-law basis for the Foundation's request and processed it under state law—the Texas Public Information Act ("TPIA"), Tex. Gov't Code § 552.001 *et seq*. (Doc. 21-2.) Pursuant to Section 552.301 of the TPIA, VR Bennett sought permission from the Attorney General of Texas to withhold the requested records. (Docs. 21 ¶¶ 19-22; 21-4; 21-5.)

In a letter dated January 18, 2018, the Foundation informed VR Bennett in writing that she was in violation of the NVRA for denying the Foundation's request to inspect voter list maintenance records. (Doc. 21 ¶ 23; Doc. 21-6.) The letter stated, for the third time, that the Foundation's request was made pursuant to the NVRA and is "not a request pursuant to the Texas Public Information Act." (*Id.*)

On or around March 15, 2018, the Attorney General of Texas responded to VR Bennett's request to withhold the requested records under the TPIA. (Doc. 21 ¶ 26; Doc. 21-7.) The

Attorney General's response makes no mention of the NVRA. Instead, the response states that, under the TPIA, certain records requested by the Foundation are exempt from disclosure in full while other records must be redacted prior to disclosure. (*See* Doc. 21-7.)

On March 29, 2018, the Foundation filed this action under the NVRA's private-right-of-action provision, 52 U.S.C. § 20510(b), to compel VR Bennett to allow inspection of the requested records. (Doc. 1.) Later that day, VR Bennett, pursuant to Sections 552.324 and 552.325 of the TPIA, filed a Petition for Declaratory Judgment in Texas's 459th District Court (hereafter, the "State Court Action"), seeking relief from the Attorney General's decision. The State Court Action makes no mention of the NVRA. Instead, it seeks to withhold a subset of the requested records exclusively under exceptions found in state law. *Bennett v. Paxton*, No. D-1-GN-18-001583 (459th District Court, Travis County, Tex. March 29, 2018) (filed as Doc. 12-1).

On June 6, 2018, this Court dismissed the Foundation's Complaint, but afforded the Foundation the opportunity to amend. (Doc. 20.) On June 13, 2018, the Foundation filed its First Amended Verified Complaint (Doc. 21), which VR Bennett moved to dismiss (Doc. 23). While the motion to dismiss was pending, the Foundation conducted discovery, and thereafter moved for summary judgment on November 21, 2018. (Doc. 34.) VR Bennett did not respond. Instead, on December 4, 2018, VR Bennett sought a continuance of her deadline to respond. (Doc. 35.)

At the status conference held before Judge Stacy on January 10, 2019, counsel for VR Bennett agreed to file a response to the Foundation's summary judgment motion within 30 days. Yet VR Bennett did not file a response. Instead, on February 6, 2019, VR Bennett sought a second continuance of her deadline to respond. (Doc. 41.)

On February 6, 2019, Judge Stacy recommended that VR Bennett's motion to dismiss be denied, finding that the Foundation has standing and that the amended complaint states a claim

for relief under the NVRA. (Doc. 42.) Judge Stacy granted VR Bennett's second motion for a continuance in part, giving VR Bennett "thirty (30) days from the date the District Court rules on Defendant's Motion to Dismiss to file a Response to Plaintiff's Motion for Summary Judgment." (Doc. 43.) On March 11, 2019, this Court adopted Judge Stacy's recommendation and denied VR Bennett's motion to dismiss. (Doc. 48.)

On April 2, 2019, VR Bennett filed the motion that is the subject of these objections— the Motion to Stay or Abstain. (Doc. 49.) The next day, VR Bennett sought a *third* continuance of her deadline to respond to the Foundation's motion for summary judgment. (Doc. 50.) When the Court did not act on her third request, VR Bennett finally filed a response to the Foundation's motion for summary judgment—nearly four months after the original deadline. (Doc. 52.)

On August 14, 2019, Judge Stacy granted VR Bennett's Motion to Stay or Abstain, and abated consideration of the Foundation's motion for summary judgment for a period of six months "to allow Defendant to prosecute and obtain a ruling on the declaratory judgment claim she filed in state court in March 2018." (Doc. 62.) Judge Stacy held that the temporary stay was warranted solely on *Younger* abstention grounds.

## STANDARD OF REVIEW

### I. Review of the Stay Order

With respect to matters not dispositive of a party's claim, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "The reviewing district court may determine that a factual finding is 'clearly erroneous' when it is 'left with the definite and firm conviction that a mistake has been committed.'" *Rivas v. United States Bank Nat'l Ass'n*, 2015 U.S. Dist. LEXIS 164401, at *3 (S.D. Tex. Dec. 8, 2015) (quoting *U.S. v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007)). "To the magistrate judge's legal conclusions the district court applies *de*

*novo* review and reverses if the magistrate judge errs in her legal conclusions." *Tolan v. Cotton*, No. H-09-1324, 2015 U.S. Dist. LEXIS 121717, at *2-3 (S.D. Tex. Sep. 14, 2015) (citing *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 482 (N.D. Tex. 2001)). "An 'abuse of discretion' standard applies to the review of 'the vast areas of choice' that is left to the magistrate judge who has properly applied the law to factual findings that are not clearly erroneous." *Id*. (quoting *Lahr v. Fulbright & Jaworski, LLP*, 164 F.R.D. 204, 208 (N.D. Tex. 1996)).

## II. Abstention Standard

"[A] federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("*Colorado River*"). "Parallel state-court proceedings do not detract from that obligation." *Id*. "[A]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id*. at 82 (citations and quotations omitted). In this area, any "exercise of discretion must fit within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Webb v. B.C. Rogers Poultry, Inc*., 174 F.3d 697, 701 (5th Cir. 1999). "A court necessarily abuses its discretion when it abstains outside of the doctrine's strictures." *Id.*

## ARGUMENT

## I. The NVRA's Preemptive Effect on Inconsistent State Laws Renders the Stay Order Inappropriate and Unnecessary.

### A. State Law that Conflicts with the NVRA Is Preempted and Superseded Under the Constitution's Supremacy Clause.

The issue presented in the State Court Action is whether certain records are public records under state open records law—the TPIA. That issue has no bearing on this federal cause of action. VR Bennett maintains that the State Court Action "should determine, *as a matter of*

*state law*, the nature and type of information she can legally provide to [the Foundation] attendant to the [Foundation's] public records request in this case"—under the NVRA. (Doc. 62 at 3 (emphasis added).) She is wrong. It is contrary to the Supremacy Clause to argue that the scope of state law (the TPIA) controls the scope of federal law (the NVRA). The Stay Order, by word and effect, seemingly endorses that position. (Doc. 62 at 4 ("PILF knows that a judicial determination in that case will have implications for its pending record requests under the NVRA in this case."); Doc. 62 at 4 ("PILF does not dispute, nor could it, that sections 552.101 and 62.113 of the Texas Government Code arguably place constraints upon Defendant and the type of information she can provide to PILF.").)[3]

Whatever constraints Sections 552.101 and 62.113 of the Texas Code place upon VR Bennet are superseded by obligations under federal law and the Supremacy Clause. VR Bennett has it backwards. "[S]tate law is naturally preempted to the extent of any conflict with a federal statute," *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000), because the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, provides that a federal enactment is superior to a state law. As a result, "[w]here state and federal law 'directly conflict,' state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (citation omitted). State law must also give way "where 'under the circumstances of [a] particular case, [the

_____

[3] The Foundation respectfully disagrees with Judge Stacy's belief that the Foundation "knows" that the resolution of the State Court Action "will have implications" for its request under the NVRA. The Foundation has maintained throughout this action that "[t]o the extent that any state law, including the TPIA, conflicts with the NVRA, such law is preempted and superseded by the NVRA as a federal statute." (Doc. 21 ¶ 47.) The Foundation's intervention in the State Court Action does not signal otherwise, as Judge Stacy suggested. (Doc. 62 at 4.) Rather, the Foundation intervened as a protective measure to ensure that the District Court in Travis County properly understands the facts and the federal-law basis of the request at hand. By intervening the Foundation is not conceding that state law limits the reach of the NVRA in any way. It is presenting the argument the state court action has *no authority to supersede federal law.*

challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Crosby*, 530 U.S. at 373 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

Although courts generally presume that Congress did not intend to preempt state law unless it was Congress's clear purpose to do so, *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991), this is not so with Elections Clause legislation, such as the NVRA, *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013) (the "assumption that Congress is reluctant to pre-empt does not hold when Congress acts" under the Elections Clause). Accordingly, federal courts have rejected efforts by state officials to use state records disclosure exemptions to avoid compliance with the NVRA. *Project Vote/Voting for Am., Inc. v. Long*, 813 F. Supp. 2d 738, 743 (E.D. Va. 2011) ("[T]o the extent that any Virginia law, rule, or regulation forecloses disclosure of completed voter registration applications with the voters' SSNs redacted, the court FINDS that it is preempted by the NVRA.") Virginia tried, and failed, to do exactly what VR Bennet is now doing—use state laws to deny records sought under the federal NVRA. Virginia too claimed that the "privacy concerns" should trump the disclosure requirements of the NVRA. *Project Vote /Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012). The Fourth Circuit disagreed.

> It is not the province of this court, however, to strike the proper balance between transparency and voter privacy. That is a policy question properly decided by the legislature, not the courts, and Congress has already answered the question by enacting NVRA Section 8(i)(1), which plainly requires disclosure of completed voter registration applications. Public disclosure promotes transparency in the voting process, and courts should be loath to reject a legislative effort so germane to the integrity of federal elections.

*Id*. at 339-40.

Virginia is not alone in losing that argument. *ACORN v. Edgar*, 880 F. Supp. 1215, 1222 (N.D. Ill. 1995) ("[D]eclar[ing] that all provisions of Illinois law or regulations that conflict with

the [National Voter Registration] Act are pre-empted by the [National Voter Registration] Act."). Most recently, the Maryland District Court held that a state law that prohibited disclosure of voter list maintenance records was preempted by the NVRA because the state law was "an obstacle to the accomplishment of the NVRA's purposes." *Judicial Watch, Inc. v. Lamone*, No. ELH-17-2006, 2019 U.S. Dist. LEXIS 134151, at *43 (D. Md. Aug. 8, 2019); *id*. at *41-42 (collecting NVRA preemption cases).

In her State Court Action, VR Bennett seeks to deny the Foundation access to records her office uses to determine who is and is not eligible for voter registration based on the citizenship status of the registrant. *See* Texas Gov't Code § 62.113; Tex. Elec. Code § 16.0332. VR Bennett claims that those records are not public records under *state* law. Whether she is right or wrong on that issue has no bearing on the Foundation's entitlement to relief under the NVRA. Even if Texas law is interpreted to prohibit the disclosure of certain requested records, it is invalid in these circumstances under (1) the ordinary conflict preemption doctrine because "compliance with both federal and state regulations is a physical impossibility," *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992), or (2) as in *Lamone*, the obstacle preemption doctrine, because Texas law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995).

The Stay Order should be overruled because it is based on the erroneous legal premise that the State Court Action "will have implications for [the Foundation's] pending record requests under the NVRA in this case." (Doc. 62 at 3.) It violates the Supremacy Clause and the overwhelming weight of authority regarding the NVRA. Because there is no outcome in that action that will change the course of this action, no stay is warranted.

**B. This Court Should Resolve Issues of Preemption Before Ruling on the Propriety of the Stay Request.**

The Foundation has been waiting since December 2017 to inspect VR Bennett's public voter list maintenance records. The Stay Order allows further delay of six months—or until February 2020—and contemplates further extensions. (Doc. 62 at 5.) Federal elections have taken place since this action was filed and more will likely take place before judgment, especially if the Stay Order is sustained. These elections will occur without the transparency in the registration process Congress intended when it passed the NVRA. *Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *12-13 (S.D. Fla. Mar. 30, 2018) (NVRA's Public Disclosure Provision "convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs.").

If there is any remaining doubt regarding the NVRA's preemptive effect on the TPIA with respect to the implicated records, this Court should order further briefing (if necessary) and resolve those issues before acting on the requested stay. Resolution of preemption issues—which are appropriately resolved in this Court[4]—could alleviate the need for the stay and the attendant delay that may irreparably harm the Foundation and the public.

**II. The 459th Civil District Court in Travis County Lacks Jurisdiction to Hear the Petition on Which the Stay Order Is Based.**

VR Bennett claims jurisdiction in the State Court Action based on the allegation that the Foundation made a "December 1, 2017 request for records from the Texas State Attorney General" pursuant to the TPIA, Tex. Gov't Code § 552.001 *et seq*. (Doc. 49 at 16.) Indeed, her Petition's jurisdictional statement invokes the court's authority to "determine the validity of open

---

[4] As explained, *infra*, federal preemption issues will play no role in the resolution of the State Court Action and thus those issues effectively cannot be raised in that forum.

records decisions *issued pursuant to the TPIA*." (Doc. 12-1 (emphasis added).) In other words, the court's jurisdiction depends on the existence of an underlying records request made pursuant to state law. Yet no such request exists.

The Foundation did not make a TPIA request to the Attorney General, VR Bennett, or anyone else. The basis for the Foundation's records request is and has always been the NVRA, 52 U.S.C. § 20507(i). (Doc. 21-1.) After VR Bennett sought to clarify the contours of the Foundation's request (Doc. 21-2), the Foundation repeated the federal-law basis for its request, (Doc. 21-3). VR Bennett has flagrantly ignored the federal-law basis for the Foundation's request and erroneously processed it under state law, constructing the dispute with the Attorney General, Tex. Gov't Code § 552.301, and creating a false pretense for the State Court Action, Tex. Gov't Code § 552.324, which she is now using as the sole basis to stay this case.

The Stay Order acknowledges that the request was made pursuant to the NVRA. (Doc. 62 at 2.) Yet it ignores the controlling effect and significance of that fact. Without an underlying TPIA request, there is no controversy for the 459th Civil District Court to resolve, and it would lack jurisdiction. *Roach v. Ingram*, 557 S.W.3d 203, 221-22 (Tex. App. 2018) ("Subject matter jurisdiction requires . . . a live controversy between the parties," rather than "merely a theoretical dispute") (internal citations omitted). Because the state court lacks jurisdiction to adjudicate VR Bennett's Petition, the foundation for the Stay Order does not exist, and it should be vacated.

State courts may "dismiss a suit challenging a decision of the attorney general" if the attorney general represents that the requestor has "voluntarily withdrawn the request or has abandoned the request." Tex. Gov't Code § 552.327. If dismissal is warranted when the request no longer exists, it is warranted when the request never existed in the first place.

## III.     The Requirements of the *Younger* Abstention Doctrine are Not Satisfied.

## A. The Limits of the *Younger* Abstention Doctrine.

In *Younger v. Harris*, 401 U.S. 37, 53-54 (1971), the Supreme Court held that federal courts should decline to enjoin a pending state court criminal prosecution absent a showing that the charges had been brought in bad faith or with an intent to harass. The plaintiff in *Younger* was indicted in state court for distributing leaflets in violation of the California Criminal Syndicalism Act, and he sought a federal court injunction against the state criminal prosecution on the grounds that the Act and the charges brought under it violated the First and Fourteenth Amendment. *Id*. at 38-40. The Supreme Court held that federal courts should not interfere with state criminal proceedings so long as "the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43-44. The result was a rule that state criminal proceedings should be enjoined only in "extraordinary circumstances, where the danger of irreparable loss is both great and immediate" and it "plainly appears that [asserting the constitutional defense in state court] would not afford adequate protection." *Id*. at 45 (citations omitted).

The Supreme Court has revisited and clarified the *Younger* doctrine on several occasions. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ("*Sprint*")—a decision not cited in the Stay Order—controls this Court's *Younger* analysis. *Sprint* forcefully reaffirms the longstanding principle that federal courts have a "virtually unflagging" obligation to hear and decide cases within their jurisdiction. *Sprint*, 571 U.S. at 77 (quoting *Colorado River*, 424 U.S. at 817)). "Parallel state-court proceedings do not detract from that obligation." *Id*. at 77.

*Sprint* also explicitly confined the reach of *Younger* to three "exceptional circumstances," and held that the doctrine's reach goes "no further." *Id*.

> Circumstances fitting within the *Younger* doctrine, are 'exceptional'; they include . . . 'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil

> proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.

*Id*. at 73 (citations omitted). The Supreme Court confined the second of these categories—civil enforcement proceedings—even further to include "state proceedings 'akin to a criminal prosecution' in 'important respects.'" *Id*. at 79 (quoting *Huffman v. Pursue*, Ltd., 420 U.S. 592, 604 (1975)); *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) ("[*Younger*] applies only to three exceptional categories" including "certain civil enforcement proceedings *akin to criminal prosecutions*.") (emphasis added) (citations and quotations omitted); *see also Acra Turf Club, Ltd. Liab. Co. v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014) ("After *Sprint*, the threshold requirement for applying *Younger* abstention is that the state civil enforcement proceeding must be 'quasi-criminal' in nature."). Such "important respects," as set out in *Sprint*, include

> whether (1) the action was commenced by the State in its sovereign capacity, (2) the proceeding was initiated to sanction the federal plaintiff for some wrongful act, and (3) there are other similarities to criminal actions, such as a preliminary investigation that culminated with the filing of formal charges. [*Sprint*, 571 U.S. at 79-81]. We also consider whether the State could have alternatively sought to enforce a parallel criminal statute.

*Zanzuccki*, 748 F.3d at 138 (citations omitted).

In the third category are proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts," *id*. at 72-73, such as the enforcement of a civil contempt order, *Juidice v. Vail*, 430 U.S. 327, 336, n.12 (1977), and the requirement for posting bond pending appeal, *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987).

When the state court proceeding does not fit into one of the three "exceptional" categories of cases, "the general rule governs: '[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Sprint*, 571 U.S. at 73 (quoting *Colorado River*, 424 U.S. at 817).

*Sprint* also reaffirmed another longstanding threshold requirement of *Younger* abstention—"undue interference with state proceedings." *Sprint*, 571 U.S. at 72 (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373 (1989) ("*NOPSI*")). Interference has always been the crux of the *Younger* doctrine, not similarity of the issues. "Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Id*. at 72.

### B. The State Court Action Is Not One of the Three Exceptional Circumstances for Which *Younger* Abstention Applies.

The Stay Order did not establish or even consider whether the State Court Action is one of the three exceptional circumstances for which *Younger* applies, as required by *Sprint*. 571 U.S. at 77. When considered, it is clear that VR Bennett's State Court Action is outside these narrow and exceptional circumstances. The State Court Action is plainly not a criminal enforcement proceeding nor a "civil proceeding[] involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73.

The State Court Action also "does not resemble the state enforcement actions [the Supreme] Court has found appropriate for *Younger* abstention." *Id*. at 80. It is not "akin to a criminal prosecution," as *Sprint* requires. *Id*. It was not initiated by "'the State in its sovereign capacity.'" *Id*. (quoting *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977)). Rather, the entire process was initiated when the Foundation submitted its NVRA request, and it was VR Bennett who requested the Attorney General's opinion and filed the Petition in state court. Furthermore, "[n]o state authority conducted an investigation into the [Foundation's] activities, and no state actor lodged a formal complaint against [the Foundation]. *Id*. The State Court Action is thus not the type of proceeding to which *Younger* applies and the Stay Order erred by proceeding, without analysis, as if it were.

**C.  The Relief Sought In This Action Will Not Interfere with the State Court Action.**

The Stay Order also did not establish or even consider a second threshold requirement for *Younger* abstention—that the relief sought in this action will cause "undue interference with state proceedings." *Sprint*, 571 U.S. at 72. That foundational premise of *Younger* is plainly missing. The reason is obvious: this Court is not being asked to declare the state proceedings unconstitutional, enjoin their progress, or otherwise disrupt or dictate their course, as was the case in *Younger* and others where the interference requirement was satisfied. *See Jones v. Prescott*, 702 F. App'x 205, 209 (5th Cir. 2017) ("The district court's order did not purport to enjoin a state court proceeding. Thus, the abstention doctrine of *Younger* does not apply."). In fact, the opposite is true—VR Bennett has constructed a dispute under state law in order to delay the Foundation's federal right to inspect records that will shed light on her activities.[5]

This action arises under the NVRA. The Stay Order acknowledges that. (Doc. 62 at 2.) The issue in this action is whether the NVRA requires VR Bennett to allow the Foundation to inspect the requested records. In contrast, VR Bennett's State Court Action "arises under the Texas Public Information Act." (Doc. 12-1 at 1.) VR Bennett "seeks relief from a decision of the Attorney General which requires the release of information" *pursuant to that state Act*. (*Id.*) The issue in the State Court Action is whether the TPIA requires disclosure of certain records.

Whatever the decision of this Court regarding the scope of the NVRA, it will not, and even cannot, prevent the 459th District Court in Travis County from adjudicating VR Bennett's state-law dispute with the Attorney General about the contours of the TPIA. *See Becker-Jiba*

---

[5] This case also falls within the exception to *Younger* for state proceedings brought in "bad faith" and circumstances in which application of the state statute is "patently invalid." *Sprint*, 571 U.S. at 81 (citing *Younger*, 401 U.S. at 53-54). Here, the statutes that pose barriers to disclosure under federal law are "patently invalid" by way of preemption. *Supra* Argument Section I.A.

*Water Supply Corp. v. City of Kaufman*, No. 3:03-CV-0168-D, 2003 U.S. Dist. LEXIS 10334, at *29-30 (N.D. Tex. June 18, 2003) (finding no interference where state case was an "action to adjudicate the respective rights" of the parties, "as opposed to . . . an enforcement action to compel [one party] to comply with state law.").

It is not enough that the two proceedings might involve similar records (Doc. 49 at 9), because "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter," *Sprint*, 571 U.S. at 72. Interference, not similarity, is the necessary crux of abstention. Nor is it enough that disposition in the Foundation's favor might result in disclosure of records that are confidential under state law because "there is … no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *NOPSI*, 491 U.S. at 363 (citations omitted). As the Supreme Court has often repeated, the "mere potential for conflict in the results of adjudications," *Colorado River*, 424 U.S. at 816, is not the kind of "interference" that merits federal court abstention.

*Younger* exemplified the kind of "interference" that was sufficiently exceptional to require the federal court's abstention from hearing a case, that was, like this action, jurisdictionally proper in all other respects. The *Younger* defendant sought a federal court injunction under 42 U.S.C. § 1983 against his pending state court prosecution on grounds that the statute under which he was being prosecuted violated the First Amendment. *Younger*, 401 U.S. at 41. Likewise, *Middlesex*, in the civil context, involved the same gravity of interference. There, the plaintiff filed suit in federal court seeking to enjoin state bar proceedings, alleging that the bar's disciplinary rules violated his First Amendment rights. 457 U.S. at 429. In both cases, the federal court plaintiff was seeking to effectively stop the state-initiated proceeding cold.

This action does not involve a request for any injunctive or declaratory relief with respect to the state court proceedings. The State Court Action could go on long after this action has concluded. State law is not even implicated in this action except to the extent the Foundation asks this Court to hold that any state law that would prevent disclosure of these records under the NVRA is preempted as-applied. (Doc. 21 ¶ 47.) A claim of federal preemption is viewed, however, as a "challenge to completed legislative action," which "represents neither the interference with ongoing judicial proceedings against which *Younger* was directed, nor the interference with an ongoing legislative process…." *NOPSI*, 491 U.S. at 372.

> It is, insofar as our policies of federal comity are concerned, no different in substance from a facial challenge to an allegedly unconstitutional statute or zoning ordinance – which we would assuredly not require to be brought in state courts. *See Wooley v. Maynard*, 430 U.S. 705, 711 (1977). It is true, of course, that the federal court's disposition of such a case may well affect, or for practical purposes pre-empt, a future -- or, as in the present circumstances, even a pending -- state-court action. But there is no doctrine that the availability or even the pendency of state judicial proceedings excludes the federal courts. Viewed, as it should be, as no more than a state-court challenge to completed legislative action, the Louisiana suit comes within none of the exceptions that Younger and later cases have established.

*Id*. at 372-73.

The Stay Order erred by effectively concluding that the relief sought in this action will cause undue interference with the State Court Action, of the type recognized in *Younger* and its progeny. Because no type of interference can occur, the Stay Order should be vacated.

### D. The Stay Order Erred in Its Application of the *Middlesex* Factors.

#### i. The Stay Order Erred By Treating the *Middlesex* Factors as Dispositive.

The Supreme Court clarified in *Sprint* that the *Middlesex* factors are "not dispositive" on their own, but are merely "*additional* factors appropriately considered by the federal court before invoking *Younger*." *Sprint*, 571 U.S. at 81 (emphasis in original). The Stay Order contravenes

*Sprint* because it treated the *Middlesex* factors as dispositive. (Doc. 62 at 4 (referring to the *Middlesex* factors as the "three requirements for *Younger* abstention").) The Stay Order should not have even reached those factors because the threshold requirements described *supra* were not satisfied. *Sprint*, 571 U.S. at 81 ("Divorced from their quasi-criminal context, the three *Middlesex* conditions would extend *Younger* to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest.").

### ii. The *Middlesex* Factors Do Not Support Abstention.

Even if considered, the *Middlesex* factors do not support abstention.[6] Those factors are: "(1) the dispute must involve an 'ongoing state judicial proceeding,' (2) an important state interest in the subject matter of the proceeding must be implicated, and (3) the state proceedings must afford an adequate opportunity to raise constitutional challenges." *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 189 (5th Cir. 1996). The Stay Order erred when it found each factor supported abstention.

The State Court Action is "ongoing" in name only. VR Bennett has done nothing to prosecute her case other than file the initiating Petition on March 29, 2018, nearly 15 months ago.[7] (*See* Doc. 54-3.) Her case is merely a placeholder, filed to further stall the production of public records, which is why the Foundation has moved to dismiss the State Court Action. Meanwhile, "proceedings of substance on the merits have taken place in the federal court," *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984). Motions to dismiss have been decided, discovery has taken place, and the Foundation has moved for summary judgment (Doc. 34.) The

---

[6] *See Becker-Jiba Water Supply Corp.*, 2003 U.S. Dist. LEXIS 10334, at *29 (explaining that *Middlesex* factors are considered only after "interference" is established).

[7] The docket can be viewed by entering the case number information at the website of the Travis County District Clerk. https://www.traviscountytx.gov/district-clerk/online-case-information.

parties' Joint Pretrial Order is due in a mere 34 days, and the Docket Call is just two months

away (Doc. 59). To abstain this late in the day would result in such a waste of resources that it

would frustrate the Court's interest in judicial economy, without justification. *See Spivey v.*

*Barry*, 665 F.2d 1222, 1229 (D.C. Cir. 1981) ("We do not believe that a decision to abstain at

this late date would serve the purposes that animate the abstention principle[.]").

The Stay Order found that "important state interests are implicated in the state court

proceeding, including the reach and viability of Texas statutes designed to protect private and

confidential information, including that contained in juror and voter information records." (Doc.

62 at 4.) The Attorney General of Texas seemingly disagrees. In his Original Answer, the

Attorney General asks the court to order the records disclosed under state law:

> Defendant Ken Paxton, Attorney General of Texas, respectfully asks the Court,
> upon final hearing of this lawsuit, to enter a final judgment declaring the
> information at issue *to be subject to disclosure* and orders that Plaintiff Ann Harris
> Bennett take nothing by reason of her suit and that all costs of litigation, including
> court costs, be adjudged against Plaintiff.

(Doc. 54-4 (emphasis added).) It is reasonable to conclude that the State of Texas does *not* think

there is an important interest in keeping the implicated records confidential under state law.

With respect to the third *Middlesex* factor, the Stay Order found,

> [B]oth PILF and Defendant can raise and litigate any relevant constitutional issues
> in that state court proceeding. Among those constitutional challenges is likely the
> validity and constitutional reach of the proscriptions on the release of certain juror
> and voter information under sections 552.101 and 62.113 of the Texas Government
> Code.

(Doc. 62 at 4.) That conclusion is erroneous for several reasons.

First, there are no constitutional issues raised in this action so none could be raised in the State Court Action.[8] There are, of course, *federal* issues involved in this action—namely, whether the requested records are subject to disclosure under the NVRA and the extent to which the NVRA preempts inconsistent state laws. Yet those issues cannot effectively be raised in the State Court Action, especially in the way *Younger* requires.

VR Bennett's Petition is narrowly confined to a pure issue of state law: Did the Attorney General properly conclude that certain records are subject to disclosure under the Texas Public Information Act? (Doc. 54-1.) It would make no difference and no sense to raise the federal issues of this action in that forum because they have zero bearing on the answer to that question.

Under *Younger*, abstention is not appropriate unless the affected party has an "adequate remedy at law." 401 U.S. at 43. In other words, "*Younger* abstention 'naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved.'" *ODonnell v. Harris County*, 227 F. Supp. 3d 706, 736 (S.D. Tex. 2016) (quoting *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973)). The court in Travis County will not consider *any* of the federal issues in the instant action, nor can it decide whether the Foundation is entitled to relief under the NVRA. It thus "plainly appears that this course would not afford adequate protection." *Younger*, 401 U.S. 37, 45 (1971).

## CONCLUSION

VR Bennett has delayed this action long enough. For the foregoing reasons, her latest attempt to shield her records from public scrutiny should be denied.

---

[8] The NVRA's preemptive effect on state law is not an "issue," but rather a "controlling legal principle." *Becker-Jiba Water Supply Corp.*, 2003 U.S. Dist. LEXIS 10334, at *20. Regardless, preemption arguments cannot be raised in the State Court Action because they have no bearing on what records are public records under state law.

Dated:  August 28, 2019                          Respectfully submitted,

For Plaintiff Public Interest Legal Foundation:

Andy Taylor SBN: 19727600
Southern District Bar No.: 10002
Andy Taylor & Associates, P.C.
2628 Hwy 36 South #288
Brenham, Texas 77833
Tel: 713-222-1817
Fax: 713-222-1855
andy@andytaylorlaw.com

J. Christian Adams*
Public Interest Legal Foundation
1555 King St., Ste. 200
Alexandria, VA 22314
(317) 203-5599
adams@publicinterestlegal.org

    /s/ Noel H. Johnson
Noel H. Johnson*
Public Interest Legal Foundation
32 E. Washington Street, Ste. 1675
Indianapolis, IN 46204
(317) 203-5599
njohnson@publicinterestlegal.org
*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2019, I electronically filed the foregoing using the

Court's ECF system, which will serve notice on all parties.

 /s/ Noel H. Johnson
Noel H. Johnson
njohnson@publicinterestlegal.org
Counsel for Plaintiff